KELLY, C. J.
This case involves further analysis of the issue presented in People v Sargent.[1] There we held that offense variable (OV) 9 in the sentencing guidelines1 [2] *122 cannot be scored using uncharged acts that did not occur during the same criminal transaction as the sentencing offense. Today we decide whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense[3] or also using conduct occurring afterward.
We hold that a defendant’s conduct after an offense is completed does not relate back to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise. Therefore, in this case, defendant’s flight from the police after breaking and entering a building was not a permissible basis for scoring OV 9. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for resentencing.
FACTS AND PROCEDURE
Defendant broke into a general store in Marion Township on June 28, 2002, broke into an audio store on July 20,2002, and then broke into the same general store again on January 5, 2003. No one was in the stores during the break-ins. During the January 5 incident, a witness called the police after seeing defendant and two accomplices loading stolen goods into a car. After defendant and his accomplices left the scene of the crime, a police officer saw the getaway car traveling on the road and pursued it. The chase ended when the vehicle entered a yard and crashed into a chain-link fence. The occupants fled on foot, but defendant was captured.
Defendant pleaded guilty to three counts of breaking and entering a building with intent to commit larceny[4] *123 in exchange for the dismissal of other charges, including fleeing and eluding the police.[5] In scoring the offense variables, the sentencing court assessed 10 points under OV 9 because it found that defendant had placed at least two victims in danger. The court stated that it would sentence defendant within the guidelines recommendation and imposed concurrent prison terms of 9 to 30 years, 6 to 30 years, and 6 to 30 years. The 9-year sentence resulted from the assessment of 10 points under OV 9 for fleeing from the police after the January 5 break-in.[6]
Defendant’s timely request for the appointment of appellate counsel was denied, as was his timely pro se motion for resentencing challenging the scoring of OV 9. The Court of Appeals denied defendant’s pro se application for leave to appeal for lack of merit, but this Court remanded the case to the Court of Appeals for consideration as on leave granted.[7]
The Court of Appeals affirmed defendant’s conviction, concluding that the record supported the assessment of 10 points under OV 9 because there were two to nine victims.[8] We granted defendant’s application for leave to appeal.[9]
THE PROPER APPROACH TO SCORING OFFENSE VARIABLES
The interpretation and application of the legislative sentencing guidelines, MCL 777.1 et seq. involve legal questions that this Court reviews de novo.[10]
*124 We are called on to provide further detail delineating the scope of conduct that sentencing courts should consider when scoring the offense variables of the statutory sentencing guidelines. Defendant argues that the variables are to be scored using an offense-specific approach. Under this approach, only conduct occurring during the offense of which the defendant was convicted may be considered. The prosecution, on the other hand, argues that the guidelines must be scored using a transactional approach. Under this approach, a continuum of the defendant’s conduct is examined, which can extend far beyond the acts that satisfy the elements of the sentencing offense.
In analyzing this scoring issue, we read the statutory provision for OV 9 in the context of the entire statute “so as to produce, if possible, a harmonious and consistent enactment as a whole.”[11] The fair and natural import of the provision governs, considering the subject matter of the entire statute.[12]
We addressed what conduct the sentencing court should consider in People v Sargent.[13] We explained that “the offense variables are generally offense-specific. The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense.”[14] We stated that usually “only conduct ‘relating to the offense’ may be taken into consideration when scoring the offense variables.”[15]
Our determination about how offense variables should be scored was based on a reading of the senten *125 cing guidelines statutes as a whole. We relied on the Legislature’s use of the terms “the offense” and “each offense” in MCL 777.21:
MCL 777.21 instructs us on how to score the sentencing guidelines. MCL 777.21(l)(a) instructs us to “[f|ind the offense category for the offense ... [and] determine the offense variables to be scored for that offense category ....” (Emphasis added.) MCL 777.21(2) instructs us to “score each offense” if “the defendant was convicted of multiple offenses ....” (Emphasis added.) MCL 777.21(3), which pertains to habitual offenders, instructs us to “determine the ... offense variable level.. . based on the underlying offense” and then to increase the upper limit of the recommended minimum sentence range as indicated. (Emphasis added.) This language indicates that the offense variables are generally offense specific.[16]
We found it telling in Sargent that the individual offense variables presume that the sentencing offense is the reference point for scoring purposes. This is because only when conduct occurring after commission of the sentencing offense is to be considered in scoring do the variables spell out the scope of that conduct:
That the general rule is that the relevant factors are those relating to the offense being scored is further supported by the fact that the statutes for some offense variables specifically provide otherwise. For instance, MCL 777.44(2)(a) provides that when scoring OV 14 (whether the offender was a leader in a multiple-offender situation), “the entire criminal transaction should be considered ....” For other offense variables, the Legislature unambiguously made it known when behavior outside the offense being scored is to be taken into account. OV 12 (contemporaneous felonious acts), for example, applies to acts that occurred within 24 hours of the sentencing offense and have not resulted in separate convictions. MCL 777.42(2)(a). OV 13 (continuing pattern of criminal behavior) explicitly *126 permits scoring for “all crimes within a 5-year period, including the sentencing offense,” regardless of whether they resulted in convictions. MCL 777.43(2)(a). OV 16 (property obtained, damaged, lost, or destroyed) provides that in “multiple offender or victim cases, the appropriate points may be determined by adding together the aggregate value of the property involved, including property involved in uncharged offenses or charges dismissed under a plea agreement.” MCL 777.46(2)(a). Finally, OV 8 (asportation or captivity of victim) specifically focuses on conduct “beyond the time necessary to commit the offense.” MCL 777.38(l)(a). That the Legislature has explicitly stated that conduct not related to the offense being scored can be considered when scoring some offense variables strengthens our conclusion that, unless stated otherwise, only conduct that relates to the offense being scored may be considered.[17]
As we explained in Sargent, it is telling that the Legislature included language in particular variables explicitly instructing the sentencing court to consider factors or conduct beyond the sentencing offense itself; however, it included no such language in other variables, such as OV 9. If the Legislature had intended a court scoring the sentencing guidelines to use a transactional approach, much of the language in some of the offense variables would have been surplusage. In interpreting a statute, we avoid a construction that would render part of the statute surplusage or nugatory.[18]
If we read the sentencing guidelines as offense-specific by default, the language defining the scope of *127 conduct for particular offense variables is not surplus-age. For example, points are assessed under OV 14 if the offender was a leader in a multiple-offender situation. The statute provides that the “entire criminal transaction should be considered” when scoring this offense variable.[19] When we acknowledge that the default procedure is to score the offense variables using an offense-specific approach, the instruction for OV 14 takes on significance. It requires OV 14 to be scored differently from most. Points must be assessed for conduct extending beyond the sentencing offense. The Legislature’s wording of the offense variable statutes implies a default rule that the variables are to be scored considering the sentencing offense alone. It is only when conduct beyond the sentencing offense is to be considered that the variables address the scope of that conduct.
Furthermore, the sentencing guidelines set forth a comprehensive, detailed scheme for scoring. Every offense to which the guidelines apply is listed in a rather voluminous part 2, comprising MCL 777.11 through 777.19.[20] When providing rules for guidelines scoring, the Legislature took pains to set forth step-by-step instructions, pointing with particularity to where one must look to make the necessary calculations. Given the Legislature’s attention to detail, we do not believe that it intended to deviate from what otherwise appears to be an offense-specific orientation. If assessing points for conduct beyond the sentencing offense were to be the norm, the Legislature would have delineated the scope of that conduct, as it did with several specific offense variables.[21]
*128 The prosecution argues that our decision in People v Morson[22] reflected our belief that the Legislature intended sentencing courts to consider a defendant’s entire criminal transaction when scoring the variables. We disagree. We never held in Morson that conduct beyond the sentencing offense can be a basis for scoring OV 9. There, 10 points were assessed under OV 9 because the defendant endangered two victims; the sentencing offense was armed robbery.[23] The defendant’s accomplice, robbed a woman of her purse at gunpoint.[24] The sentencing court concluded that there were two “victims” for purposes of OV 9: the woman who was robbed and another man standing nearby who was shot by the perpetrator.[25]
We concluded that the sentencing court did not err by finding that the person near the woman when the perpetrator stole her purse was “placed in danger of injury or loss of life” by the armed robbery.[26] Therefore, he was a victim under OV 9.[27]
*129 Our decision in Morson did not delineate the scope of conduct to be considered in scoring offense variables.[28] It simply held that the sentencing court did not err in scoring OV 9 under the particular facts of that case. As we explained in Sargent, “in a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life.”[29] That is precisely what this Court held had happened in Morson.
Reading the provisions of MCL 777.1 et seq. in harmony suggests that the offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise.
This does not mean that transactional conduct may never influence a defendant’s sentence. Such a result would frustrate the Legislature’s intention of having the guidelines promote uniformity in sentencing. Nothing precludes the sentencing court from considering transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation. As this Court explained in People v Babcock,
in considering whether to depart from the guidelines, the trial court must ascertain whether taking into account an allegedly substantial and compelling reason would contribute to a more proportionate criminal sentence than is available within the guidelines range. In other words, if there are substantial and compelling reasons that lead the trial court to believe that a sentence within the guidelines range is not proportionate to the seriousness of the defendant’s conduct and to the *130 seriousness of his criminal history, the trial court should depart from the guidelines. [30]
In addition, of course, the prosecution is always free to charge a defendant with multiple offenses if they exist, rather than a single offense. The defendant then would be sentenced for all offenses for which a conviction was obtained.[31] Our decision today “not only respects the defendant’s right to be sentenced on the basis of law, but it also respects the trial court’s interest in having defendant serve the sentence that it truly intends.”[32]
*131 THE PROPER SCORING OF OV 9 IN THIS CASE
A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information.[33] A sentence is invalid when a sentencing court relies on an inappropriate guidelines range.[34] “[A] sentence that is outside the appropriate guidelines sentence range, for whatever reason, is appealable regardless of whether the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand.”[35] However, in this case, the issue was raised in a motion for resentencing.[36]
*132 The sentencing court assessed 10 points under OV 9 for defendant’s breaking and entering conviction resulting from the January 5, 2003, offense. This means that it determined there were two to nine victims.[37] At the time of defendant’s offense, OV 9 instructed the court to “[c]ount each person who was placed in danger of injury or loss of life as a victim.”[38]
The Court of Appeals concluded that assessing 10 points under OV 9 was proper because of defendant’s conduct after the breaking and entering had been completed. Specifically, the Court of Appeals upheld the OV 9 score because “in leaving the scene of the crime, defendant was pursued by a police officer for whom he had failed to stop.[39] He ultimately crashed his car,[40] *133 and he and the two other occupants ran off.”[41] The Court decided that defendant’s postoffense conduct supported the scoring of OV 9 because “two or more persons were placed in danger of injury during the criminal transaction. ”[42]
We conclude that the Court of Appeals erred by considering the entire criminal transaction and using defendant’s conduct after the crime was completed as the basis for scoring OV 9. Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable.[43] OV 9 does not provide for consideration of *134 conduct after completion of the sentencing offense. Therefore, it must be scored in this case solely on the basis of defendant’s conduct during the breaking and entering. If the prosecution had wanted defendant to be punished for fleeing and eluding, it should not have dismissed the fleeing and eluding charge. It would be fundamentally unfair to allow the prosecution to drop the fleeing and eluding charge while brokering a plea bargain, then resurrect it at sentencing in another form.
When we consider only the breaking and entering, it is apparent that no one was placed in danger of injury or loss of life. No one was present in the general store or anywhere near the defendant when he broke into the building.[44] Even under the current version of OV 9, *135 which allows consideration of property loss, the owner of the general store would be the only victim. Defendant’s flight from the police occurred after the offense was completed for purposes of scoring the sentencing guidelines; hence, it cannot be considered in scoring OV 9.[45] Defendant did not place two to nine victims in danger of injury or loss of life. Therefore, no points should have been assessed for OV 9.[46]
CONCLUSION
Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise. The language of the statute for OV 9 does not so provide.
In this case, the sentencing court scored OV 9 by including defendant’s conduct in fleeing from the police after his offense of breaking into and entering an unoccupied building was completed. His flight from the police should not have been used in scoring OV 9. The sentencing court should have assessed zero points for OV 9 because no one was placed in danger during the breaking and entering.
Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the circuit court for resentencing.
*136 Cavanagh, Markman, and Hathaway, JJ., concurred with Kelly, C.J.

 People v Sargent, 481 Mich 346; 750 NW2d 161 (2008).

 MCL 777.1 et seq.

 The sentencing offense is the crime of which the defendant has been convicted and for which he or she is being sentenced.

 MCL 750.110.

 MCL 750.479a(3).

 Had no points been assessed under OV 9, the guidelines minimum sentence range would have been 19 to 76 months, and defendant’s 9-year sentence would have exceeded the recommended sentencing range.

 People v McGraw, 473 Mich 877 (2005).

 People v McGraw, unpublished opinion per curiam, issued November 16, 2006 (Docket No. 264052); 2006 WL 3334585.

 People v McGraw, 483 Mich 876 (2009).

 People v Morson, 471 Mich 248, 255; 685 NW2d 203 (2004).

 Grand Rapids v Crocker, 219 Mich 178, 182-183; 189 NW 221 (1922).

 People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).

 People v Sargent, 481 Mich 346; 750 NW2d 161 (2008).

 Id. at 348.

 Id. at 349.

 Id. at 348.

 Id. at 349-350. Although Sargent held that the Legislature intended an offense-specific view to scoring the offense variables, we did not definitively answer the question whether transactional conduct may be considered. It was not necessary to reach that question to resolve the case because it was clear that the defendant’s conduct did not occur during the same criminal transaction. The conduct in question was remote from the sentencing offense. Id. at 350-351.

 Baker v Gen Motors Corp, 409 Mich 639, 665; 297 NW2d 387 (1980).

 MCL 777.44(2)(a).

 See MCL 777.21(1).

 The dissent claims that we fail to explain on what authority we limit the scoring for offense variables to the sentencing offense. It was the *128 Legislature, not we, that drafted and enacted the detailed and complex sentencing scheme. It was the Legislature that chose to limit the scoring for offense variables to the sentencing offense. The dissent loses sight of the most important piece of the puzzle: the statute. Instead, it turns to res gestae and Court of Appeals decisions to support its position, one of which did not even involve the statutory sentencing guidelines, hut instead involved the old judicial sentencing guidelines. See People v Chesebro, 206 Mich App 468; 522 NW2d 677 (1994). Furthermore, the dissent rests its res gestae argument on People v Gillis, 474 Mich 105; 712 NW2d 419 (2006), which interpreted the felony-murder statute, quite a different statute from the sentencing guidelines statute. When the smoke from the dissent clears, one can see that its arguments are far from the mark.

 People v Morson, 471 Mich 248; 685 NW2d 203 (2004).

 Id. at 254.

 Id. at 253.

 Id. at 253, 261.

 See MCL 777.39(2)(a), as added by 1998 PA 317, which is also the version of the statute applicable in this case.

 Id. at 262.

 Morson explicitly avoided this question because there were three competing views advocated by three concurring and dissenting justices.

 Sargent, 481 Mich at 351 n 2.

 People v Babcock, 469 Mich 247, 264; 666 NW2d 231 (2003). This Court has further recognized that conduct beyond the sentencing offense can be considered for purposes of departing from the guidelines. See, for example, People v Price, 477 Mich 1; 723 NW2d 201 (2006). Price observed that, although foreign convictions cannot be considered under prior record variable 1, and prior offenses not occurring within five years of the sentencing offense cannot be considered under OV 13, “they can, under appropriate circumstances, give rise to a substantial and compelling reason to justify a departure from the guidelines range____” Id. at 5 & n 3 The dissent’s “sky is falling” prophecy for the sentencing scheme is unfounded; contrary to the dissent’s contention, post at 154, our reasoning is, in fact, supported “by the law of this state.” Also contrary to the dissent’s contention, post at 154, we are not suggesting that “sentencing courts should depart freely from the guidelines....” To the contrary, we are suggesting that a subsequent criminal offense may rise to the level of a substantial and compelling reason that justifies a departure from the sentencing guidelines. To the extent that it does, consistently with Babcock and People v Smith, 482 Mich 292; 754 NW2d 284 (2008), it can certainly be taken into consideration by the sentencing court.

 Therefore, with regard to the dissent’s hypothetical examples, post at 137, the prosecution could charge the defendant with the subsequently committed offenses. The defendant could be charged for felonious assault, MCL 750.82, in the first hypothetical and mutilation of a dead body, MCL 750.160, in the second. Alternatively, the sentencing court could consider the subsequently committed offenses and the aggravating circumstances at sentencing. For example, it could consider the defendant’s sending the photographs to the victim’s family in determining what sentence within the guidelines range to impose or whether to depart from the guidelines recommendation.

 People v Francisco, 474 Mich 82, 92; 711 NW2d 44 (2006).

 Id. at 88-89.

 Id. at 89.

 People v Kimble, 470 Mich 305, 310; 684 NW2d 669 (2004).

 The dissent contends that the defendant waived any sentencing error. However, this theory was never raised by the prosecution. Failure to brief an issue on appeal constitutes abandonment. Mitcham v Detroit, 355 Mich 182, 203; 94 NW2d 388 (1959). “[A] party is bound to the theory on which the cause was prosecuted or defended in the court below.” Gross v Gen Motors Corp, 448 Mich 147, 162 n 8; 528 NW2d 707 (1995); see also Dwelley v Tom McDonnell, Inc, 334 Mich 229, 233; 54 NW2d 217 (1952). Because the prosecution failed to raise the issue of defendant’s waiver, we need not consider it. Because we simply do not consider the prosecution’s waiver argument, contrary to the dissent’s contention, post at 138, we do not “creat[e] a new ‘revival of waived errors’ rule ....” That is, we do not conclude that defendant’s filing of a motion for resentencing would “revive” an issue that the defendant had, indeed, already expressly waived. We are also not suggesting that the prosecution’s failure to raise an issue constitutes a “confession of substantive error,” post at 140-141. Thus, we are not by any stretch of the imagination overruling People v Smith, 439 Mich 954 (1992), and we are not creating any “automatic rule of reversal,” post at 141. In addition, contrary to the dissent’s assertion, post at 139, we do not contend that an appellee is required to file a cross-appeal to raise a waiver argument. We simply conclude that an appellee should at some point actually raise the waiver argument. And if he or she does not do so, this Court may, although it is not required to, choose not to raise and address the argument on its own. This is hardly a “novel view.” See, e.g., People v Hamacher, 432 Mich 157, 168; 438 NW2d 43 (1989), which refused to address the prosecution’s waiver *132 argument because the “prosecutor did not raise the waiver issue... until he filed his brief in this Court,” and People v Oliver, 417 Mich 366, 386 n 17; 338 NW2d 167 (1983), which refused to address the prosecution’s harmless error argument because the prosecution failed to raise this issue below. Indeed, the dissent’s view that whether a defendant has waived an issue “must be” considered by an appellate court, even if the prosecution has not raised waiver, is subject to question. Notably, the dissent cites only a short order of this Court in support of this proposition. Smith, 439 Mich at 954. But in Smith, this Court took issue with the Court of Appeals holding that failure to file a responsive brief “constitutes a confession of error.” See People v Smith, 190 Mich App 352, 356; 475 NW2d 875 (1991), vacated in part 439 Mich 954 (1992). In the present case, the waiver issue was not only never raised below, it was never raised before us. Finally, to answer the dissent’s question, see post at 139, defendant had no reason to make the argument that the prosecution failed to raise the waiver issue. The prosecution never raised the waiver issue in the first place; it is only this Court in a dissent that has raised it. Because the prosecution failed to raise the waiver issue, there is no need for us to address whether defendant’s counsel was ineffective.

 MCL 777.39(l)(c).

 MCL 777.39(2)(a). The statute was amended in 2006 to include property loss as well. However, this amendment has no effect on this case.

 The record indicated that defendant was not pursued from the scene of the crime. The police officer spotted the getaway vehicle on the road away from the crime site.

 From the record, it is unclear if defendant was the driver or merely a passenger.

 McGraw, unpub op at 2-3; 2006 WL 3334585, at *2.

 Id. at 3; 2006 WL 3334585, at *2 (emphasis added). The Court of Appeals’ opinion assumed that defendant was the driver of the vehicle and that an accomplice to a crime is a “victim” under OV 9. It relied on People v Cook, 254 Mich App 635; 658 NW2d 184 (2003), and Chesebro for the proposition that conduct beyond the sentencing offense can be used to score the offense variables. Chesebro involved the judicial sentencing guidelines, not the statutory sentencing guidelines that we interpret today. Furthermore, both of those cases were decided without the benefit of our decisions in Sargent and Morson. They are overruled insofar as they stand for the proposition that offense variables can be scored using conduct beyond the sentencing offense.

 MCL 769.31 provides a set of definitions for use “in this section and [MCL 769.34],” which deals with sentencing departures. MCL 769.31(d) provides:
“Offense characteristics” means the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate. For purposes of this subdivision, an offense described in section 33b of the corrections code of 1953, 1953 PA 232, MCL 791.233b, that resulted in a conviction and that arose out of the same transaction as the offense for which the sentencing guidelines are being scored shall be considered as an aggravating factor.
The dissent argues that MCL 769.31(d) permits a sentencing court to consider offenses that are not listed in MCL 791.233b or that did not result in a conviction. This is inconsistent with the well-established legal doctrine *134 expressio unius est exclusio alterius (“the expression of one thing is the exclusion of another”). Miller v Allstate Ins Co, 481 Mich 601, 611; 751 NW2d 463 (2008).
Th[is] maxim is a rule of construction that is a product of logic and common sense. Feld v Robert & Charles Beauty Salon, 435 Mich 352, 362; 459 NW2d 279 (1990), quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 47.24, at 203. This Court long ago stated that no maxim is more uniformly used to properly construe statutes. [Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74-75; 711 NW2d 340 (2006).]
Even assuming that MCL 769.31(d) applies to scoring offense variables because it states that offenses listed in MCL 791.233b that resulted in a conviction can be considered, the dissent’s argument fails. This is because the natural implication of that assumption is that offenses not listed or that did not result in a conviction cannot be considered. In any event, we need not decide whether a sentencing court can consider listed offenses resulting in conviction that arose out of the same transaction as the sentencing offense. This is because fleeing and eluding is not a listed offense, and defendant was never convicted of fleeing and eluding. Consequently, contrary to what the dissent asserts, post at 152, there is no need for us to decide whether defendant’s fleeing and eluding constituted an “aggravating... factorD relating to the offense” under MCL 769.31(d).

 Cf. Morson, 471 Mich at 262-263, which held that there were two “victims” under OV 9 when two people were present at the scene of the sentencing offense and were placed in danger.

 There is no need for us to determine precisely when the breaking and entering offense was completed for purposes of scoring the sentencing guidelines in this case; it is clear that defendant’s flight from the police and the subsequent events involved here were far beyond and removed from the sentencing offense.

 Defendant also argues that OV 9 was improperly scored at 10 points because (1) accomplices to the sentencing crime are not “victims” for purposes of scoring OV 9 and (2) there was insufficient evidence that he was the driver of the vehicle that fled the police and crashed into the chain-link fence. We need not address these issues because they pertain to conduct committed after the breaking and entering was completed and for which defendant cannot have points assessed under OV 9.