# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACKIE LAMONT THOMPSON,

Defendant-Appellant.

FOR PUBLICATION
August 25, 2015

No. 318128
Clinton Circuit Court
LC No. 13-009068-FC

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

RONAYNE KRAUSE, P.J. (*dissenting*)

I respectfully dissent. I do not read the applicable statutory or case law as narrowly as does the majority, and I further conclude that even if the majority correctly reads that law, the majority misunderstands the facts. Either way, I would affirm.

As the majority explains, defendant pleaded no contest to digitally penetrating his then-13-year-old stepdaughter in exchange for a sentence within the sentencing guidelines. Defendant was, notably, *not* charged for any of the prior approximately two years of sexual, physical, and emotional abuse he inflicted on his stepdaughter. The instant appeal specifically concerns the trial court's scoring of 50 points under offense variable (OV) 7, which should be scored if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). At issue is solely whether defendant's egregious conduct may be used to score OV 7 in light of the record evidence and our Supreme Court's explanation that "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009).[1]

Factually, the trial court relied in significant part on a police report. The officer's summary of the victim's interview states that the victim was 13 years old at the time of the

---

[1] *McGraw* dealt with offense variable 9, which simply states: "Offense variable 9 is number of victims." MCL 777.39(1). It also dealt with conduct that occurred after the charge on which defendant was convicted. *Id.* at 122.

-1-

specific assault of which defendant was convicted and that defendant had sexually abused her at least twice a week for the prior couple of years. The last sexual assault occurred on February 24, 2013; defendant pleaded no contest specifically to that last assault. In the police report, and in an attached written statement by the victim, reference was made to an incident in which defendant put a BB gun to the victim's head and threatened to kill her if she did not perform a sexual act. The police report also alluded to instances in which defendant pulled the victim's hair, struck her buttocks, threatened her life if she said anything about the sexual abuse, and hit her with a belt buckle, resulting in bruises on numerous occasions. In the victim's statement, she asserted that defendant had threatened her life "many times" and that the extent to which she subsequently did not resist was purely out of fear. Medical documents attached to the police report indicated that defendant once bit the victim on one of her breasts, leaving a scar. The trial court also considered defendant's PSIR, which essentially echoed the police report information.

When reviewing a challenge to a sentencing guidelines score, we review for clear error whether the trial court's factual findings are supported by a preponderance of the evidence, and we review de novo as a question of law whether those factual findings properly justify the guidelines scores at issue. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). We defer to the trial court's superior ability to observe and assess the credibility of the persons who, in contrast to the operation of this Court, actually appeared before it. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a presentence investigation report (PSIR). *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

"Sadism" is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). As our Supreme Court has explained, "torture," "excessive brutality," or "conduct designed to substantially increase the fear and anxiety a victim suffered" are to be given their ordinarily-understood meanings, and fifty points should be scored if *any* such conduct occurred beyond whatever "baseline" level thereof would ordinarily be attendant to the offense. *Hardy*, 494 Mich at 439-443. I believe that any conceivable argument to the effect that defendant inflicted anything less on the victim would be utterly illogical. Further, it would not take into account the particular dynamics of ongoing, serial abuse, either as a general matter or the specific abuse that occurred in this case.

In my opinion, the majority reads more into *McGraw* than our Supreme Court wrote. The holding in *McGraw* was not that conduct that occurred at a different time from the sentencing offense could *never* be considered when scoring guidelines for that offense, but rather that any such conduct must *pertain to* the sentencing offense unless the offense variable specifies otherwise. *McGraw*, 484 Mich at 129. Indeed, our Supreme Court was urged to pronounce an approach restricting consideration to "only conduct occurring during the offense," but instead explained that the consideration was "conduct '*relating to* the offense.'" *Id*. at 124, quoting *People v Sargent*, 481 Mich 346, 349; 750 NW2d 161 (2008). While perhaps a subtle distinction I think it a highly significant one. Furthermore, strictly speaking, *McGraw* was concerned with the possibility of conduct that occurred *after the completion of the sentencing offense* being used

to score that offense. *McGraw*, 484 Mich at 122, 132-135. There is no possibility of any subsequent conduct being used to score OV 7 in the instant matter.

The majority points out that our Supreme Court explicitly held that sentencing courts could consider "transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation." *McGraw*, 484 Mich at 129. The majority then goes on to discuss *conduct unrelated to the sentencing offense*, which entirely misses the point. Again, our Supreme Court explicitly *rejected* a "conduct occurring during the offense" approach in favor of a "conduct relating to the offense" one. Furthermore, our Supreme Court clearly regarded "transactional conduct" as something else entirely, which makes perfect sense in the context of a defendant who committed a series of offenses as part of a single transaction, in which case it would be unsurprising that conduct relating to only one of those offenses could not be used to score another. What the majority overlooks is that there is absolutely no reason why conduct cannot relate to multiple offenses, and that our Supreme Court expressly rejected the notion that such conduct must chronologically overlap the offense for which it is used to score sentencing guidelines.

Our Supreme Court has explained that the proper consideration is not a matter of establishing a strict chronological delineation, but rather whether the conduct in question pertains to the offense, which is an inherently fact-specific inquiry. I believe that the majority finds in our Supreme Court's opinion a neat, simple, and easy-to-apply bright-line rule that was never articulated nor intended and that, in this case, is neither proper nor just. Our Supreme Court could easily have stated that conduct that occurs at a different time from the sentencing offense may not be a scoring basis unless a statute provides otherwise, but did not.

That being said, I have no doubt that under simple fact scenarios, scorable conduct may well usually chronologically overlap with the sentencing offense. An observed trend, however, is not a rule, and statistics reveal nothing about specific cases. As applied to OV 7, I conclude that in light of our Supreme Court's explanations in *McGraw* and the plain language of MCL 777.37, whether conduct may be scored depends not necessarily on when it occurred but, aside from the necessary egregiousness,[2] the extent to which that conduct *pertains to the sentencing offense*. Nothing in *McGraw* dictates that such conduct must occur at the same time as the sentencing offense or must pertain to *only* the sentencing offense.

Importantly, this case does not involve a simple fact scenario. It has long been recognized that "there is general agreement among experts that reactions of a victim of sexual assault vary quite significantly from those of a victim of the 'average' crime." *People v Beckley*, 434 Mich 691, 715-716; 456 NW2d 391 (1990). Furthermore, this is precisely the kind of case in which conduct inherently does not pertain to only a single event. As a general matter, in

---

[2] In other words, whether the defendant engaged in it for the purpose of increasing the fear and anxiety a victim suffered during the offense beyond what such a victim might "ordinarily" be expected to suffer during that offense. See *Hardy*, 494 Mich at 439-443. This, of course, may be inferred from circumstantial evidence. *Id*. at 440 n 26. As I read the majority's opinion, I believe we at least agree that defendant's conduct exceeded the threshold for that criterion.

situations involving serial sexual or physical abuse, the perpetrators inherently need to maintain control over their victims, often through some manner of threat or manipulation *intended to affect the victim's future behavior.*[3] In any kind of ongoing interpersonal relationship, it simply makes no sense to pretend that one interaction is irrelevant to subsequent interactions, and this is *especially* so in familial relationships or any other relationship involving authority, control, or influence over another person.[4] Situations involving serial acts of abuse over time are not mere "transactions," but are deeply and fundamentally interconnected. To regard the individual acts as discrete and separable ignores both the research and common sense. Acts of "extraordinary" brutality or terror during any particular act of abuse are inherently going to "pertain to" future acts of abuse of the same victim.

Nowhere has the Legislature explicitly stated that scorable conduct must have occurred during the offense, but rather the conduct must have been designed to increase fear and anxiety during the offense. Furthermore, nowhere has the Legislature required such conduct to be directed towards *only* the convicted offense, to the exclusion of others. Defendant's conduct, irrespective of whether he engaged in more than the bare minimum necessary to constitute his charged offense on February 24, 2013, unambiguously was designed to increase the victim's fear and anxiety during the offense on that date. Because it was conduct that pertains to the charged

---

[3] See, e.g., National Center for Prosecution of Child Abuse, *Investigation and Prosecution of Child Abuse* (Thousand Oaks, CA: 3d ed, 2004), ch 1, pp 13-15; Sherry Hamby & John Grych, *The Complex Dynamics of Victimization: Understanding Differential Vulnerability without Blaming the Victim*, (chapter to appear in forthcoming *Handbook on the psychology of violence* (Hoboken, NJ: Wiley-Blackwell), excerpt pp 14-15; Commonwealth of Australia Royal Commission into Institutional Responses to Child Sexual Abuse, *Interim Report Volume I* (2014), ch 3, p 124.

[4] For example, intimate partner violence is overwhelmingly chronic. See generally, Michael R. Rand and Linda E. Saltzman, *The Nature and Extent of Recurring Intimate Partner Violence Against Women in the United States*, Journal of Comparative Family Studies Vol 34, No 1 (Winter 2003), pp 137-149. Controlling behaviors are, unsurprisingly, associated with the infliction of physical or sexual violence within relationships. Marina Catallozzi, MD, et al, *Understanding control in adolescent and young adult relationships*, Archives of Pediatrics & Adolescent Medicine, vol 165, issue 4, pp 313-319 (2011). Furthermore, experiencing violence physically alters young brains to become more sensitive to further threats and more prone to future psychological problems, much like soldiers exposed to combat stresses. Eamon J. McCrory, et al, *Heightened neural reactivity to threat in child victims of family violence*, Current Biology, vol 21, issue 23, R947-R948 (2011). It should be obvious that *any* hostile environment from which any person cannot escape is, for all practical purposes, little more than a form of torture, with the net effect of causing a progressive depletion of that person's ability to cope. Involvement as either a victim or a perpetrator of any individual offense within the context of such ongoing abuse is intrinsically and qualitatively different from involvement in a criminal act that actually can be severed from any others. I am concerned by the majority's dismissal of these facts as some kind of emotional plea.

offense and meets the statutory definition of conduct to be scored under OV 7, I find that the trial court properly scored 50 points.[5] I would, therefore, affirm the trial court.

/s/ Amy Ronayne Krause

---

[5] I appreciate that in light of our Supreme Court's recent decision in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) [Docket No. 149073], facts that increase a defendant's sentencing guidelines range must be admitted by the defendant or found by a jury. The instant case features a situation seemingly unaddressed by *Lockridge*, where defendant did not, strictly speaking, personally admit facts directly to the sentencing court. However, defendant expressly agreed to the trial court's reliance on the police report for the no contest plea taking procedure and has not made any contention that the trial court's *factual* findings were incorrect or improper. I would consider his doing so an admission that I perceive no constitutional infirmity under *Lockridge*.