# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT ERIC THOMPSON,

        Defendant-Appellant.

UNPUBLISHED
August 23, 2016

No. 328744
Midland Circuit Court
LC No. 13-005420-FH

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] from his plea based conviction of two counts of capturing/distributing the image of an unclothed person, MCL 750.539j(2)(b), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion). We reverse and remand.

Defendant was originally sentenced as a third-offense habitual offender, MCL 769.11, to three concurrent prison terms of 57 months to 10 years, with 209 days' jail credit, pursuant to a *Cobbs* agreement.[2] Defendant argued that his sentence was invalid and moved to correct it. The trial court agreed that it erred in scoring prior record variable (PRV) 5, that defendant's CSC-IV sentence was invalid, and that the judgment of sentence incorrectly identified the year he began serving his sentence. However, the court rejected the argument that offense variables (OVs) 3 and 4 were misscored. Consistent with the rescored legislative sentencing guidelines and the *Cobbs* agreement, the trial court resentenced defendant to serve 43 months to 10 years for his capturing/distributing the image of an unclothed person convictions and two years and eight months to four years for his CSC-IV conviction. The clerical error was corrected. All sentences ran concurrently, and defendant was credited for 1,024 days served.

---

[1] *People v Thompson*, unpublished order of the Court of Appeals, entered September 29, 2015 (Docket No. 328744). The appeal has been expedited. *People v Thompson*, unpublished order of the Court of Appeals, entered May 6, 2016 (Docket No. 328744).

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

-1-

# I. FACTS

The parties "stipulate[d] to the facts [as described] in the agent's description of the offense" in the presentence investigation report (PSIR), a summary of which follows.

At the time of the incidents giving rise to this prosecution, defendant and the victim "ha[d] been in a long term relationship . . . and ha[d] one child in common," AT. Sometime between February 26, 2013 and February 28, 2013, the victim "suffered injuries that rendered her mostly incapacitated and unconscious." Authorities discovered the victim's injuries on February 28, 2013, when her mother went to the couple's home, defendant "immediately told her they have to do something, because [the victim] overdosed," and 911 was called. The victim had sustained extensive injuries, including head injuries that required "an emergency craniotomy to remove blood clots from [her] brain . . . [and] repair the fractures to her skull." The time that the injuries occurred could not be determined, but the doctor who performed the surgery believed that the "blood clots . . . had been there for over 24 hours." When the victim was coming "in and out of consciousness" post-surgery, she "stated, 'Rob hurt me.' " But when she was later interviewed by police, she indicated she "had no recollection of how she was injured or what led to her being hospitalized," a contention she maintained at the resentencing hearing.

Initially, defendant claimed the victim was injured when she suffered a series of falls after she had ingested drugs. He maintained she fell "across a hard coffee table and hit her head on the couch," then "fell down a second time," and later "fell several more times in the shower." Upon a second interview, defendant's story changed. At the second interview, defendant claimed that he was fighting with the victim about her "drug abuse" when she "began to throw and tear [defendant's] personal property apart." Defendant explained that he grabbed her "to stop her . . . and calm her down," but she "broke away from him and fell, hitting her head on the concrete stairs." The surgeon indicated that her "type of skull fracture could have been sustained by falling on concrete with some force." Defendant explained that he "didn't seek medical treatment . . . sooner" because "he thought she was just overdosing and would come out of it" and "didn't want to get her in trouble or have her lose her job and not be able to pursue a nursing career." TA, then three years old, was interviewed. When told that her mother was "sick" and asked if she knew why, TA responded that defendant " 'bammed her head and she don't have any feelings now' " and that defendant " 'bammed her head and she flipped, flipped, flipped.' "

The victim turned over to police videos of her recorded by defendant. The PSIR summarized the videos, explaining they depicted the victim in various stages of undress; one showed defendant and the victim engaged in "a sexual position." As depicted on the videos, the victim was described variously as "unresponsive," "incoherent," and "incapacitated." In one video, "significant redness and bruising on her back," "round red marks or burn type marks" on "[h]er lower middle back," "red marks on [the] right side of her back [that] appear to be scratches or a hand print from a possible struggle or physical abuse," and "what appears to be redness or a long scratch in the crack of her upper buttocks area" can be seen. In some videos, defendant made allegations regarding the victim using drugs. There are indications in all the videos that TA is present. According to the PSIR, the victim "ha[d] no memory of the video incidents."

## II. ANALYSIS

Defendant argues that the trial court incorrectly scored OVs 3 and 4. We review a trial court's factual findings underlying its OV scoring for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). But this Court reviews de novo whether those facts support OV scoring, *id.*, and any constitutional issue implicated, *People v Hill*, 257 Mich App 126, 149-150; 667 NW2d 78 (2003).

Defendants have a due process right to be "sentence[d] . . . upon accurate information." *People v Robinson*, 147 Mich App 509, 510; 382 NW2d 809 (1985). A " 'sentence is invalid if it is based on inaccurate information.' " *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006), quoting *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). Remand for resentencing is required if a defendant is sentenced within a minimum guideline sentencing range calculated as the result of "a scoring error or inaccurate information." *Id.* at 88.

### A. OV 3

OV 3 covers physical injury to the victim and directs the trial court to score 25 points if "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). If "[n]o physical injury occurred to a victim," the trial court must score zero points. MCL 777.33(1)(f).

"Reading the provisions of MCL 777.1 *et seq.* [the legislative sentencing guidelines] in harmony suggests that the offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise." *People v McGraw*, 484 Mich 120, 129; 782 NW2d 202 (2010). The language of OV 3 contains no such exception. MCL 777.33. Accordingly, when scoring OV 3, the trial court may only "consider conduct occurring during the criminal offense." See *People v Thompson*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 318128); slip op at 5 (applying the rule to OV 7). Trial courts should not undertake a "transactional-approach" that involves "examining 'a continuum of the defendant's conduct . . . far beyond the acts that satisfy the elements of the sentencing offense.' " *Id.* at 6, quoting *McGraw*, 484 Mich at 124 (omission added). This applies to defendant's conduct that occurred before, see *id.* at 7-8, and after, *McGraw*, 484 Mich at 122-123, the sentencing offense.

In this case, the record lacks evidence that the victim suffered a "[l]ife threatening or permanent incapacitating injury," MCL 777.33(1), "during" any of the offenses, *Thompson*, ___ Mich App at ___; slip op at 5. Therefore, OV 3 should have been scored at zero points.

### B. OV 4

OV 4 governs "psychological injury to a victim." MCL 777.34(1). Ten points are scored when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "There must be some evidence of psychological injury on the record to justify a 10-point score." *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012).

When considering what constitutes a "[s]erious psychological injury requiring professional treatment," MCL 777.34(1)(a), we have held that "the victim's expression of

fearfulness" is sufficient. *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). Further, victim statements of "feeling . . . hurt," *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013), and "suffer[ing] from sleeplessness," *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012), will support a 10-point score. Here, the victim testified at resentencing that she was "[v]ery scared" and fears "the day [defendant] gets released," testified that she felt "hurt[ ]," and agreed that she was having trouble sleeping, sentiments echoed by her mother and a male acquaintance. OV 4 was properly scored.

### III. CONCLUSION

Adjusted, defendant's OV score is 15 and his PRV score is 70. Given his third habitual offender status, defendant's minimum guideline range is 10 to 34 months. MCL 777.66; MCL 777.21(3)(b). Because defendant was sentenced within a minimum guideline sentencing range calculated based on an inaccurate interpretation of a relevant statute, *Francisco*, 474 Mich at 88, and the trial court made it clear that it felt bound by the *Cobbs* agreement, we reverse defendant's sentence and remand for resentencing under properly scored guidelines, see *People v Detloff*, 489 Mich 955; 798 NW2d 506 (2011).

We reverse defendant's sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro