*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAMI ALI JABER,

        Defendant-Appellant.

UNPUBLISHED
December 18, 2024
1:57 PM

No. 368387
Wayne Circuit Court
LC No. 18-005065-01-FC

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

After remand by the Michigan Supreme Court to the trial court,[1] defendant appeals as of right his resentencing to 25 to 40 years' imprisonment for second-degree murder, MCL 750.317, and two years' imprisonment for possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b. We vacate and remand for resentencing.

## I. FACTS

Defendant appealed his original convictions and sentences in *People v Jaber*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2021 (Docket No. 352092), judgment rev'd in part and vacated in part 511 Mich 895 (2023). We affirmed defendant's convictions and sentences. *Id*. at 1, 11. Specifically, we held the trial court properly assessed 15 points for OV 5 and sentenced defendant proportionally. *Id*. at 7-11. In lieu of granting defendant's appeal, the Michigan Supreme Court reversed our judgment affirming the trial court's 15-point assessment for OV 5. *Jaber*, 511 Mich at 895. Because a correct scoring of OV 5 changed the applicable guidelines range for the minimum sentence, the Court vacated the trial court's sentence, vacated, as moot, our opinion addressing the reasonableness of the trial court's departure sentence, and remanded the matter to the trial court for resentencing. *Id*. at 896.

---

[1] *People v Jaber*, 511 Mich 895 (2023).

At resentencing, the prosecution objected to the trial court assessing zero points for OV 5. The victim's father made a statement to the trial court explaining how the incident had been "very traumatic" on his family, especially the victim's mother and older brother. The trial court questioned the victim's father about the specific trauma. The victim's father said the victim's mother is unable to celebrate Mother's Day because that was the day the victim was shot and killed by defendant. The victim's father further reported that the victim's mother did not come to court for defendant's sentencing because she did not want to see defendant again. And the victim's father said that the victim's brother also stopped celebrating his birthday because that was the date the victim was murdered. Over defendant's objection, the trial court assessed 15 points for OV 5, determining that there existed more than just sadness and grief in the family because the victim's mother did not celebrate Mother's Day and the victim's brother had not celebrated his birthday for five years.

Thereafter, defendant addressed the trial court and apologized for his actions and explained how he had been improving himself while imprisoned. The trial court acknowledged defendant's remorse, but found defendant displayed a pattern of interference with the administration of justice. More specifically, after shooting the victim, defendant picked up the shell casing and attempted to flush it down the toilet. He also watched the video of the shooting before he called the police.[2] And, when he called the police, he provided an explanation for his actions that was inconsistent with the video. Moreover, defendant had a pending warrant request regarding bringing phones into the jail. The trial court reiterated the facts of the case it believed to be true, determined an upward departure from the recommended minimum guidelines range of 162 to 270 months' was proportionate, and imposed a sentence of 25 to 40 years' (300 to 480 months') imprisonment for second-degree murder. This appeal followed.

## II. STANDARDS OF REVIEW

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake . . . ." *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

## III. OV 15

Defendant argues the trial court erred when it assessed 15 points for OV 5 because the record lacked evidence to support such an assessment. We agree.

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "When calculating the sentencing guidelines, a court may consider all record

---

[2] Our review of the videotape reflects that defendant called the police *before* he watched the security footage.

evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). A preponderance of the evidence is "such evidence, as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008) (citation omitted).

OV 5 addresses the "psychological injury to a member of a victim's family." MCL 777.35(1). OV 5 is scored only when the sentencing offense is "homicide, attempted homicide, conspiracy or solicitation to commit homicide, or assault with the intent to commit murder." MCL 777.22(1). A trial court assesses 15 points for OV 5 when "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). But, zero points are assessed when "no serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(b). In determining whether "serious psychological injury to the victim's family may require professional treatment," "the fact that treatment has not been sought is not conclusive." MCL 777.35(2). " 'In this context, serious is defined as having important or dangerous possible consequences.' " *People v Baskerville*, 333 Mich App 276, 292; 963 NW2d 620 (2020) (quotation marks omitted), quoting *People v Calloway*, 500 Mich 180, 186; 895 NW2d 165 (2017). "At first blush, the second subsection of MCL 777.35 appears to contradict the first concerning whether professional treatment is required for points to be assessed." *Calloway*, 500 Mich at 185. However, "[t]he second subsection makes this clear by stating that 'the fact that treatment has not been sought is not conclusive,' and by specifying that a 15–point score is appropriate if the injury '*may* require professional treatment.' " *Id.*, quoting MCL 777.35(2).

Furthermore, this Court has held that a sentencing court erred when it assessed 15 points for OV 5 after the murder victim's wife said that the couple had been together for 36 years and would have celebrated their 20th anniversary, but for the murder. *People v Bailey*, 330 Mich App 41, 61; 944 NW2d 370 (2019). The victim's wife also said that she had forgiven the defendant, even though he took her husband, who was also a son, brother, grandfather, and great grandfather. *Id.* Later, the victim's wife told the court that she prayed it would impose the sentence that the defendant deserved and that he never saw "the light of day." *Id.* at 62. This Court held that the sentencing court improperly assessed 15 points for OV 5, reasoning that "[a]lthough the victim's wife clearly experienced grief following her husband's death, there was no evidence presented to show that she experienced the type of serious psychological trauma contemplated in MCL 777.35." *Id.*

In this case, the PSIR reflected that the victim's father told the Probation Department that both the victim's mother and brother would provide a verbal statement at sentencing. The victim's father further reported that no one in the family had sought psychological services and they were not receiving therapy or counseling.

At the original sentencing in December 2019, however, the victim's mother did not speak. The victim's father spoke and described his relationship with his son. The victim's father also said that he wished that defendant had made a different decision that day so that he would have his son and defendant "would have his freedom."

The victim's brother also spoke at the original sentencing. He said:

My brother was killed on Mother's Day. My mother has to for the rest of her life have to deal with that, and have to live with that. A mother shouldn't have to bury her son on Mother's Day.

. . . [A]lso, my brother was killed on my birthday. So, not only was it Mother's Day, it was also my birthday. And, I have to live with that for the rest of my life, my birthday for the rest of my life, has to be known as my brother's death day. And, that's all I got to say.

Regarding the victim's mother, at the original sentencing, the judge observed:

I see your pain, and I understand that you are not able to speak today with regard to this issue.

The Court is going to – not withstanding [sic] the fact that the two gentlemen that stood here and the statements that they made, the Court is going to assess points for OV 5. This has to be psychologically damaging for this family. And I can see the tears and the trauma that this has caused without anyone even having to speak. So the Court is going to score OV 5.

In defendant's appeal of our initial decision affirming the sentencing court's decision to assess 15 points for OV 5, our Supreme Court held the victim's father and brother " 'clearly experienced grief' from the victim's death, 'there was no evidence presented to show that [the victim's family] experienced the type of serious psychological trauma contemplated in MCL 777.35.' " *Jaber*, 511 Mich at 895, quoting *Bailey*, 330 Mich App at 62. Further, contrary to this Court's initial opinion, our Supreme Court explained that "psychological injury cannot be inferred from the fact that the victim's mother did not speak at sentencing, as the record is silent as to why she did not speak." *Id*. And, turning to the sentencing court's comment that it saw the victim's mother's pain and understood that she was not able to speak, our Supreme Court determined that "[w]hile it [was] possible that the victim's mother was unable to speak because of her pain, no evidence was submitted on [that] point." Accordingly, our Supreme Court concluded that "[t]he evidence presented was insufficient to support the trial court's decision to score OV 5 at 15 points."

Before the resentencing, the Probation Department prepared an updated PSIR. It reflected that the victim's father reported that while he planned to attend the sentencing, the rest of his family would not. The victim's father explained that the victim's mother did not want to see defendant again. The victim's father also described how the victim's brother "does not want to celebrate his birthday because it reminds him of his brother being murdered." Likewise, the victim's mother "does not want to celebrate Mother's Day as it brings her back to her son's murder, so this is the psychological impact it has had on my family."

Thereafter, the victim's father spoke at the resentencing. He said that "this situation has been very traumatic on my family," in particular on the victim's mother and his oldest son. The court then questioned the victim's father regarding his statements in the updated PSIR. The victim's father confirmed that the victim's mother did not celebrate Mother's Day and the victim's

brother did not celebrate his birthday because "this has impacted them so." He further confirmed that while they were not receiving any psychological treatment, they were still grieving. Finally, the victim's father confirmed that while the victim's mother was present throughout the case, she did not attend the resentencing because she did not want to see defendant.

The prosecutor then asked the court to score 15 points for OV 5. Defense counsel objected "given the language in the . . . Supreme Court remand order." In particular, defense counsel noted that while there were "clear expressions of grief," "there was no evidence presented to show that the victim's family experienced the type of serious psychological trauma contemplated within the statute. . . ." The sentencing judge responded that she was "hearing more than grief" given that a mother "cannot even fathom celebrating Mother's Day" and a "brother cannot even deal with his birthday." The judge elaborated:

> There are people who grieve who could go on and can celebrate. This happened, this shooting happened in 2018. We're now in 2023 and this family is still grappling with the death of [the victim] at the hands of [defendant]. So I don't see this is just mere grief. I don't.

On appeal, defendant argues that "the record before the court at resentencing was no different than the record at the original sentencing and our Supreme Court has already determined that the record was insufficient to warrant a score of 15 points for OV 5." Moreover, defendant contends the record on remand was "insufficient to make a finding that the family members suffered the type of 'serious psychological injury' contemplated by" MCL 777.35(1)(a).

We do not agree that the record at resentencing mirrors the record at the original sentencing. Further, this situation is, in part, factually distinguishable from the one presented in *Bailey*, 330 Mich App at 61, where the murder victim's wife had forgiven her husband's murderer. Even so, we conclude that the trial court erred in assessing 15 points for OV 5 because the evidence adduced during the resentencing did not establish by a preponderance of evidence that a serious psychological injury requiring professional treatment occurred as opposed to a continuing, long-term grieving process on the dates identified. *Bailey*, 330 Mich App at 61-62; *Cross*, 281 Mich App at 240.

When zero points are assessed for OV 5, defendant's sentencing guidelines range changes from OV level III to OV level II. MCL 777.61. At resentencing, defendant's sentencing guidelines range was 162 to 270 months' imprisonment, but, with the 15-point reduction, it is now 144 to 240 months' imprisonment. *Id*. Accordingly, defendant is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006).

## IV. UPWARD DEPARTURE

Because we are vacating the trial court's judgment of sentence and remanding for resentencing, defendant's arguments regarding the trial court's imposition of an upward out-of-

guidelines sentence[3] are moot and we do not address them further. *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010).

## V. REASSIGNMENT

Defendant requests we remand this case to a different judge for resentencing because the judge's conduct at sentencing and resentencing "strongly suggest that she cannot reasonably be expected to set aside her previously held beliefs and justly resolve the issue at a subsequent resentencing." Defendant points to the court's factual errors, which were refuted by the record evidence, and the erroneous assessment of 15 points for OV 5 when "there was no appreciable difference between the victim impact statements at the original sentencing proceeding and the resentencing." Defendant further asserts that reassignment is advisable to preserve the appearance of justice and would not entail waste or duplication of judicial resources out of proportion to the gain in preserving the appearance of fairness.

"When a case is remanded for resentencing, the reviewing court may hold that resentencing should be carried out by a different judge." *People v Dixon-Bey*, 340 Mich App 292, 303-304; 985 NW2d 904 (2022). To determine whether resentencing should occur before a different judge, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citation omitted).]

According to defendant, the sentencing court made statements that were not supported by the record. First, the court said that defendant viewed the store's security video before calling the police when the video actually showed defendant calling the police and then viewing the footage. Second, the court described the victim as picking up an overpriced piece of peppermint before eating it and dropping the wrapper on the floor without throwing other things on the floor. But, the video footage showed the victim removing candies, removing wrappers, and scattering both on the floor.[4] Third, the court commented that defendant sprayed the victim with "dog repellent"

---

[3] When a court imposes an out-of-guidelines sentence, it must not only articulate its reasons for departure, but must also explain the extent of its departure independent of the reasons given to impose the departure sentence. See *People v Smith*, 482 Mich 292, 305-306; 754 NW2d 284 (2008).

[4] The female customer inside the store when defendant shot the victim testified that "[t]he victim opened some peppermints, I believe, and [d]efendant appeared to tell him to stop opening the peppermints." She saw defendant take a white candy and open it. She did not know if he was eating it and to her knowledge he did not pay for it. Defendant testified that the victim had candy in his hand and was opening it up. The victim had not paid for the candy. Defendant was angry

rather than mace before shooting him and putting another customer in jeopardy when defendant shot the victim.[5]  But, during the resentencing, the court stated that it had reviewed the updated PSIR, considered defendant's sentencing memorandum, and the arguments and information presented to it at resentencing.  Further, when defense counsel brought a separate factual error to the judge's attention, she corrected herself.  In light of this, we have confidence that, if factual errors are brought to the judge's attention, she will act appropriately.

Similarly, the sentencing court reviewed our Supreme Court's order in this matter and recognized *Bailey*.  And although we conclude that the sentencing court erred in assessing 15 points for OV 5 on this record, the court explained its rationale for doing so.  It did not act in stubbornness or defiance of our Supreme Court's order or *Bailey*.  Moreover, the court reduced defendant's original minimum and maximum sentences by ten years.  This does not evidence that the resentencing court "would reasonably be expected upon remand to have substantial difficulty in putting out of . . . her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected . . . .  *Hill*, 221 Mich App at 398 (quotation marks and citation omitted).

---

because the victim continued to open the candy and it was on the floor.  In defendant's view, the victim was challenging him about what he was going to do about the victim's actions.  The gas station employee also testified that defendant asked the victim why he was opening candy and throwing it on the floor.  According to this employee, the victim just kept on opening candy and throwing it on the floor or grabbing a piece of candy and throwing it on the floor.  The employee said that there were assorted candies in the area in front of the cash registers for customers to purchase.  Those candies ranged in price from ten cents to two dollars.  If the employee remembered correctly, the candies taken by the victim were mints, and, if so, they cost 10 cents.

[5] Specifically, defendant's appellate counsel argued:

> The words "dog repellent" appear nowhere in Mr. Jaber's PSI[R].  Furthermore, throughout the trial all witnesses testified that Mr. Jaber maced [the victim].  There is no record support for the trial court's factual finding that Mr. Jaber used dog repellent during the altercation.  (Footnotes omitted.)

Counsel urged this Court to search the PSIR and trial transcript "for either the word 'dog' or 'repellant' [sic], and submitted that "a search for either word" in those documents "will return zero results."

We agree that neither "dog" nor "repellent" appears in the trial transcript or the PSIR.  And although the trial witnesses used the term "mace" or "pepper spray," the prosecution recently provided this Court with photographs of the can of "mace" that were admitted as exhibits during trial.  The "DIRECTIONS FOR USE" on the can explain how to use the product "[t]o repel [an] attacking dog" by "[s]praying [a] stream of repellent directly into [the] dog's face and eyes."  Further, the prosecution previously represented that the trial exhibits showed that the police recovered a brand of "Back off" dog repellent.  See Appellee's Supplemental Brief on Appeal filed on July 18, 2022 in the Michigan Supreme Court, p 38.  Because current appellate counsel represented defendant during the earlier Supreme Court proceeding, we presume she was aware of these trial exhibits and their content.

Nor can we conclude that "reassignment is advisable to preserve the appearance of justice . . . ." *Id*. Again, the judge indicated that she considered the updated materials and information provided before and during the initial resentencing. She also substantially reduced defendant's original sentence. *Id*. This does not suggest that the judge had a closed-minded approach to resentencing.

Moreover, this case began in 2018. The sentencing judge presided over a four-day jury trial, the sentencing, and the resentencing. Any reassignment would require review of the record below without any gain in preserving the appearance of fairness. *Id*. For these reasons, we decline to order the second resentencing to be conducted by another judge.

Instead, we vacate the trial court's judgment of sentence and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica