# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT LOUIS WALDEN,

Defendant-Appellant.

FOR PUBLICATION
April 20, 2017
9:05 a.m.

No. 330144
Monroe Circuit Court
LC No. 14-041572-FC

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

BOONSTRA, J.

Defendant appeals by right his conviction, following a jury trial, of voluntary manslaughter, MCL 750.321. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to 120 to 270 months' imprisonment. The issues raised on appeal relate only to defendant's sentence. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal arises out of the fatal stabbing of Bryan Allen on October 1, 2014 in the 300 block of Almyra Avenue in Monroe, Michigan. Derek Brown testified that at 9:30 p.m. or 10:00 p.m., he and Allen were on Almyra Avenue, playing on their cellular telephones, their backs to a group of people engaged in an ongoing altercation nearby.

Brown testified that defendant came up suddenly behind them, and yelled, "I got something for you!" Defendant then threw a jacket over Allen's face and made two "motions" towards Allen's abdomen. Brown assumed that defendant had punched Allen. Allen pushed the jacket off him, and defendant "peeled off" in a car parked a couple of feet away. Allen, perhaps not realizing he had been stabbed, told Brown, "come on, let's go," and the two walked across the street and through a backyard on their way to Allen's mother's home. On the way, Allen told Brown that he was "messed up," claimed that defendant had stabbed him, and fell to the ground. Brown pulled up Allen's shirt, which was soaked with blood, and observed Allen's intestines hanging out. Brown began calling for help. Three people unknown to Brown came to assist. A truck then pulled up, and by Brown's recollection, three individuals loaded Allen into the truck and rushed him to Mercy Hospital. Allen succumbed to his injuries and died that night.

Defendant testified that at around 9:30 p.m. or 10:00 p.m., he went to Almyra Avenue to gamble. When he arrived in his girlfriend's car, roughly 10 to 15 people were in the street

-1-

shooting dice. Defendant testified that a participant in the dice game, Kelly Aaron, "jumped" him, punched him, kicked him, and stomped on his head. According to defendant, he was able to escape with the assistance of another participant in the dice game, but Aaron followed him, hitting him, punching him, and chasing him around the car. Allen and Brown then "walked up" on defendant, and defendant pulled out a pocketknife for protection because he was afraid for his life. Being surrounded, defendant began to "sling," or wave, the pocketknife around to keep people back. Defendant did not think that he hit anyone with the knife. Eventually, defendant was able to get into the car, which he dropped off at the home of a friend of his girlfriend. Defendant then paid an unknown individual to take him to Detroit. On the way, defendant threw his pocketknife out of the window at an Applebee's restaurant. Defendant learned later that night that Allen had died.

Defendant was convicted as described earlier. At sentencing, the trial court scored 10 points for offense variable (OV) 9 (number of victims). The trial court also departed upward by 13 months from the advisory minimum sentencing guidelines range, stating in support of the departure:

> In this matter the sentencing guidelines are 43 to 107 months as . . . both attorneys have indicated. It's advisory at this point in time given the *Lockridge* case. [Defendant] had three misdemeanors but he was out on bond for aggravated assault at the time this thing occurred. . . . [T]he jury didn't buy the self[-]defense argument and I don't buy the self[-]defense argument.

> * * *

> Now, the *Lockridge* case says that I don't have to find a substantial and compelling reason to deviate from the guidelines anymore or I don't have to elucidate those reasons. However, I think just a couple of things that came out in trial; you testified yourself . . . that you got stabbed four times. I don't know if that's true or not true but I don't know why in God's name you'd be carrying a knife if you were the victim of being stabbed before.

> Once this thing took place there was immediately [sic] leaving the scene, changing the cars and as [the prosecutor] pointed out because it struck me as well, you were driven to Detroit by an anonymous or random person, which I don't believe in a million years. I don't think you told the truth there and I don't think you really told the truth about the facts and circumstances as they went down at the time.

> All lives do matter. [Allen] will not see his child graduate from high school, get married, do all the things that you're still going to have an opportunity no matter what I do, you're still going to have an opportunity to see your children do. And that's just not right and that's just not fair but I can't make that right and I can't make it fair.

This appeal followed.

-2-

## II. OFFENSE VARIABLE 9

Defendant argues that the trial court incorrectly assessed 10 points for OV 9. The substance of defendant's argument is that because there was only one victim, Allen, OV 9 should have been scored at zero points. We disagree.

We review the trial court's factual determinations regarding an OV score for clear error; such determinations must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by the statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which [this Court] reviews de novo." *Id*.

MCL 777.39 governs the scoring of OV 9, providing in pertinent part as follows:

(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c) There were 2 to 9 victims who were placed in danger of physical injury or death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 points

(d) There were fewer than 2 victims who were placed in danger of physical injury or death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0 points

(2) All of the following apply to scoring offense variable 9:

(a) Count each person who was placed in danger of physical injury or loss of life or property as a victim.

Under MCL 777.39(2)(a), each person who was placed in danger of physical injury or loss of life is considered a victim for the purposes of scoring OV 9. *People v McGraw*, 484 Mich 120, 128; 771 NW2d 655 (2009). See also *People v Sargent*, 481 Mich 346 n 2; 750 NW2d 161 (2008) ("in a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life").

The facts in this case support the trial court's determination that more than one victim was placed in danger of physical injury or loss of life. Witnesses testified that several men were gambling in a dice game when the altercation between defendant and Aaron began. By defendant's own testimony, at least three people were near defendant when he drew a knife and began swinging it for protection so that he could get into his car and leave. Therefore, although Allen was the only person stabbed, at least two other people were placed in immediate danger of physical injury or loss of life and are thus victims for the purpose of scoring OV 9. MCL 777.39(2)(a); *Sargent*, 481 Mich at 346 n 2. Accordingly, defendant was properly assessed 10 points for OV 9, because between two and nine victims were placed at risk of physical injury or loss of life. MCL 777.39(1)(c). Because defendant's OVs were scored based on accurate

information, he is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 86; 711 NW2d 44 (2006).

## II. UPWARD SENTENCING DEPARTURE

Defendant also argues that his sentence was procedurally and substantively unreasonable under MCL 769.34(3)(b)[1] and, accordingly, that he is entitled to have his case remanded for resentencing. We disagree. A defendant "d[oes] not need to take any special steps to preserve the question of the proportionality of [his] sentence and properly present[s] it for appeal by providing this Court with a copy of the presentence investigation report." *People v Cain*, 238 Mich App 95, 129; 605 NW2d 28 (1999), citing MCR 7.212(C)(7); see also *People v Oswald*, 208 Mich App 444, 446; 528 NW2d 782 (1995). Further, there is no preservation requirement when the trial court imposes a sentence more severe than sentencing guidelines recommend. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). We review the reasonableness of a sentence for an abuse of the trial court's discretion. See *People v Steanhouse*, 313 Mich App 1, 44-47; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016), quoting *People v Milbourn*, 435 Mich 630, 634-636; 461 NW2d 1 (1990). We conclude from the circumstances of this case, the record, and the trial court's statements during sentencing, that the sentence imposed was reasonable.

We first reject defendant's initial contention that his sentence is procedurally unreasonable because OV 9 was incorrectly scored, and that his total OV score is therefore incorrect. As discussed earlier, OV 9 was properly scored. Even if defendant's position had merit, his total OV score would only drop from 100 points to 90 points, which would not have any impact on his minimum sentencing guidelines range.

With regard to defendant's claim that his sentence was substantively unreasonable, our Supreme Court in *Lockridge*, 498 Mich at 364-365, rendered the Michigan sentencing guidelines advisory. Additionally, the Court in *Lockridge* determined that trial courts are no longer required to articulate substantial and compelling reasons to depart from the minimum sentencing guidelines range; rather, the sentence must only be reasonable. *Id*. at 391-392. This Court has stated that a sentence is reasonable under *Lockridge* if it meets the principle of proportionality enumerated in *Milbourn*. *Steanhouse*, 313 Mich App at 22.[2] "[T]he principle of

---

[1] MCL 769.34(3)(b) states: "The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight."

[2] Our Supreme Court has granted leave to appeal in *Steanhouse* and in *People v Masroor*, 313 Mich App 358; 880 NW2d 812 (2015), and directed the parties in those cases to address the following issues:

proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 363. Put another way, "the [trial] judge . . . must take into account the nature of the offense and the background of the offender." *Id*. at 651. As our Supreme Court has stated:

> [D]epartures [from the minimum sentencing guidelines] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing . . . . [T]rial judges may continue to depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. [*Milbourn*, 435 Mich at 656-657.]

Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense . . . , (2) factors that were inadequately considered by the guidelines . . . , and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor . . . , the defendant's misconduct while in custody . . . , the defendant's expressions of remorse . . . , and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

In this case, defendant was sentenced on August 6, 2015, after *Lockridge* was decided by our Supreme Court. The trial court in fact made specific reference to *Lockridge*, and it therefore was fully aware that any sentencing departure was subject to a reasonableness requirement. The minimum sentencing guidelines range was 43 to 107 months' imprisonment. The trial court sentenced defendant, as a second habitual offender, MCL 769.10, to a minimum term of 120 months' imprisonment, a departure of 13 months over the maximum minimum sentence of 107 months.

Considering the modest nature of the upward departure, the trial court's statements in support of the sentence, and the record, we conclude that the trial court did not abuse its discretion and that the sentence imposed satisfied the requirement that a sentencing departure be

> (1) whether MCL 769.34(2) and (3) remain in full force and effect where the defendant's guidelines range is not dependent on judicial fact-finding, see MCL 8.5; (2) whether the prosecutor's application asks this Court in effect to overrule the remedy in [*Lockridge*, 498 Mich at 391], and, if so, how *stare decisis* should affect this Court's analysis; (3) whether it is proper to remand a case to the circuit court for consideration under Part VI of this Court's opinion in [*Lockridge*] where the trial court exceeded the defendant's guidelines range; and, (4) what standard applies to appellate review of sentences following the decision in [*Lockridge*]. [*People v Steanhouse*, 499 Mich 934; 879 NW2d 252 (2016).]

The Supreme Court heard oral argument in those cases on January 10, 2017. The Supreme Court has not yet issued a ruling that would clarify the standard for assessing the reasonableness of a departure sentence post-*Lockridge*.

-5-

"proportionate to the seriousness of the circumstances of the offense and the offender." *Milbourn*, 435 Mich at 636. The trial court noted the seriousness of the offense as well as several factors not accounted for in the guidelines, relating in part to defendant's potential for rehabilitation and lack of remorse. The court noted, for example, that defendant was on bond for aggravated assault at the time he committed the instant offense.[3] Indeed, defendant was not merely "on bond"; rather, he was on bond for *aggravated assault*, and the record reflects that defendant posted a bond on that earlier aggravated assault charge on September 26, 2014 and that he committed the instant offense a mere five days later. And this current offense is a homicide carried out by way of yet another assault, this one carried out with a knife (notwithstanding that defendant claimed to have himself been the victim of multiple stabbings) with such a level of vicious brutality as to physically disembowel (and cruelly end the life of) his victim. The trial court additionally noted that defendant immediately fled the scene, switched cars, and claimed to have been driven to Detroit by an individual he could not identify. The trial court expressed its belief that defendant had not given truthful testimony regarding the events that had occurred.

The record further reflects that defendant, by the age of 21, had a criminal history comprised of three prior adult convictions (not including the aggravated assault charge for which he was on bond at the time of the current offense, for which charge defendant escaped prosecution in light of his manslaughter conviction in this case), and three juvenile convictions (not including one additional charge for which defendant was granted diversion). This was therefore his ninth charged criminal offense. At the time of his arrest, he was also subject to an active personal protection order securing the protection of the mother of his children.

The prosecution recommended an upward departure sentence of 180 to 270 months, substantially greater than that imposed by the trial court, offering the following reasons: "1) many @ scene sought help for the deceased – not [defendant] (failure to help takes away from claim of accident/self-defense)[;] 2) every reasonable 'OV' total well over 75 points – the maximum[;] 3) it is one thing to run from the scene – it is another to 'switch cars' and hide out in another city [and be driven by a 'random person'.][;] 4) trial testimony of defendant[; and] 5) deterrence of 'street crime' where witnesses often do not come forward." In relation to the prosecution's recommendation, the upward departure imposed was modest indeed.

For all of these reasons, and although the trial court did not explicitly refer to the principle of proportionality, we conclude under the circumstances presented that its decision conformed to the law as articulated in *Milbourn*, that the sentence was proportional under *Milbourn*, and accordingly that it was reasonable under *Lockridge*. Accordingly, defendant is not entitled to resentencing on the grounds that his sentence was unreasonable.

With due respect to our partially dissenting colleague, we conclude that the trial court's articulation of departure reasons was sufficient and was appropriately directed to proportionality

---

[3] Although MCL 777.56 provides for the scoring of points for an offender on bond awaiting sentencing for a felony or misdemeanor, and defendant was scored 5 points for this under prior record variable (PRV) 6, the trial court clearly felt this factor was given inadequate weight.

-6-

principles, and that the reasonableness of the departure sentence imposed was more than supported by the record. Moreover, notwithstanding the dissent's characterization, our review, as stated at the outset of this opinion, is for an abuse of discretion. Indeed, *Lockridge expanded* a trial court's sentencing discretion, subject to reasonableness review. Greater trial court discretion constricts an appellate court's wherewithal to find an abuse of discretion. We therefore remain true to the abuse of discretion standard, and are not, as the dissent suggests, "employing a form of de novo review."

Finally, we note that defendant did not raise a challenge to his sentence based on *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), in either the trial court or this Court. Any such challenge would be unpreserved and reviewed for plain error affecting defendant's substantial rights. *Lockridge*, 498 Mich at 392. Such a challenge would not in any event be legitimate because the trial court sentenced defendant with full knowledge of *Lockridge* and the advisory nature of the guidelines, and a change in the scoring of OV 9 would not alter the applicable minimum sentencing guideline range. And there can be no plain *Lockridge* error where there was an upward departure. *Lockridge*, 498 Mich at 395 and n 31. We therefore conclude that the *Crosby*[4] remand procedure outlined in *Lockridge* is not required in this case. Were we to determine that defendant's sentence was unreasonable, we would instead vacate that sentence and remand for resentencing, but because we find the departure reasonable, we affirm.

Affirmed.


/s/ Mark T. Boonstra
/s/ Peter D. O'Connell

---

[4] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).