# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN EDWARD SHERBURNE,

Defendant-Appellant.

UNPUBLISHED
August 14, 2018

No. 329174
Shiawassee Circuit Court
LC Nos. 14-006468-FC and 14-006469-FH

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Defendant pleaded nolo contendere to sexually abusing two very young girls in two separate lower court files. In one case, the trial court sentenced defendant within his calculated minimum sentencing guidelines. In the other, the court departed significantly, sentencing defendant to 41 to 63 years' imprisonment. Defendant now challenges only his upwardly departing sentence in Lower Court No. 14-006468-FC.

The trial court stated several, well-founded reasons to support departing upward from the sentencing guidelines. However, the court did not adequately connect those reasons to the particular 22-year departure made in this case. We vacate defendant's sentence in Lower Court No. 14-006468-FC and remand for the trial court to fill that gap in the record. As defendant has not challenged his sentence in Lower Court No. 14-006469-FH, we affirm that sentence.

## I. BACKGROUND

In 2010, defendant sexually abused five-year-old DS while she was placed in his care for babysitting. Defendant has admitted to touching DS in the vaginal area over her underwear. Although DS's mother contemporaneously reported the abuse and an investigation was conducted, the prosecutor did not pursue charges at that time. In 2014, defendant sexually abused four-year-old JA, the daughter of his live-in girlfriend. On one occasion, defendant sexually touched JA. On a second, defendant penetrated JA's rectum with his penis and forced her to perform fellatio upon him. The prosecutor then charged defendant for offenses against both victims. As to DS, the prosecutor charged defendant with one count of criminal sexual conduct (CSC), second degree in violation of MCL 750.520c(2)(b) (sexual contact with a victim less than 13 years of age by a defendant over 17 years of age). As to JA, the prosecutor charged him with one count of CSC-2 and two counts of CSC-1 in violation of MCL 750.520b(2)(b) (sexual penetration of a victim under 13 by a defendant over 17).

-1-

Ultimately, defendant pleaded nolo contendere to one count of CSC-2 against each child. Defendant's sentencing guidelines were calculated separately for each offense. Defendant's minimum sentencing guidelines range for his assault of DS was calculated at 50 to 200 months. The trial court sentenced defendant within those guidelines and he does not appeal his sentence in that matter. Defendant's minimum sentencing guidelines range for his assault against JA was higher given the severity of the offense: 58 to 228 months. The court departed upward from that range, sentencing defendant to 492 to 756 months (41 to 63 years), a 22-year departure, because the sentencing range was "not good enough" and was "not justice today."

We note that the court sentenced defendant before *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), was decided. The court therefore sought substantial and compelling, objective and verifiable reasons supporting its decision. The court noted that defendant had been convicted of attempted CSC-3 in 1997, and spent a year in jail. Along with nonsexual crimes, defendant had later been twice convicted of failure to comply with the sex offender registry, leading to 145 days of jail time. Shortly after his first compliance failure, defendant sexually abused DS. The second conviction was after. At that time, the court opined, "I think the signs were apparent as to what you are, Mr. Sherburne."

The court further emphasized the young age of defendant's victims and the toll his crimes took on their wellbeing. DS had attempted suicide, her grades suffered to the point she had to be held back a year, and she took sleeping pills. JA was only "four years old when she was savaged," the court continued. The court did not "know what other word to use, and [it] tried to think of a word that could describe this matter, and the only word that [came] to [the court's] mind is savagely." "The effects of these offenses on these little girls" could not "be adequately reflected in any minimum [s]entence guideline."

The court further cited defendant's failure to rehabilitate:

> [Y]ou have failed miserably at rehabilitation again and again. The [s]entence guidelines, they don't reflect how badly you've failed. And these aren't subjective statements by the Court, Mr. Sherburne, it's right here in front of us. What I'm placing on the record today are verifiable, mostly by you.

> * * *

> Mr. Sherburne, you've had counseling, you were given drugs to help you, you were even sent, you were even sent to the Department of Community Mental Health for a forensic evaluation to determine whether or not you understood what you're doing, and whether or not you were competent to stand trial.

"[P]sychological testing suggest[ed]," however, that defendant "may have been exaggerating his symptoms. Based on all these factors, the court found, "What is proportioned, in this Court's mind, is a significant upward departure that [the court] believe[d] would adequately protect society."

Defendant filed a delayed application for leave to appeal, which this Court denied. Defendant sought leave in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded to us to consider the proportionality of defendant's upwardly departing sentence

in accordance with *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (*Steanhouse II*). *People v Sherburne*, 501 Mich 904; 902 NW2d 601 (2017).

## II. LEGAL PRINCIPLES

We review departure sentences for reasonableness, *Lockridge*, 498 Mich at 392, and review a lower court's determination that a particular sentence is reasonable for an abuse of discretion. *Steanhouse II*, 500 Mich at 471. In determining whether a trial court abused its discretion by unreasonably departing from the sentencing guidelines, we consider whether the court conformed to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse II*, 500 Mich at 476-477. In this regard, we must consider whether the trial court acted within its discretion by imposing a sentence that is proportionate to the seriousness of the particular offense and the character of the particular offender. *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017), oral argument gtd on the application 501 Mich ___ (2018).

In *Milbourn*, 435 Mich at 635, the Supreme Court held that the sentencing guidelines were designed with the "principle of proportionality" in mind, to impose punishment "relative [to the] seriousness and severity of individual criminal offenses." The Legislature already took into account the seriousness of the various criminal offenses and the danger imposed by recidivism in creating the guidelines and "intended more serious commissions of a given crime by persons with a history of criminal behavior to receive harsher sentences than relatively less serious breaches of the same penal statute by first-time offenders." *Id*. Judges departing from the guidelines must exercise their discretion "according to the same principle of proportionality," *id*. at 635-636, and impose a sentence that is proportionate to the seriousness of the particular offense and offender. *Steanhouse II*, 500 Mich at 474. To this end, trial courts may depart "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Milbourn*, 435 Mich at 657. The guidelines are "a useful tool," but departure sentences are "appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing." *Id*. at 657-658.

In application, the *Milbourn* Court found that "departures from the guidelines, unsupported by reasons not adequately reflected in the guidelines variables, should . . . alert the appellate court to the possibility of a misclassification of the seriousness of a given crime by a given offender and a misuse of the . . . sentencing scheme." *Id*. at 659. The Court explained:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. . . . [*Milbourn*, 435 Mich at 659-660 (emphasis added).]

In *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008), the Supreme Court described a practical application of the principle of proportionality. The *Smith* Court required a trial court to rationalize and articulate why the specific departure sentence imposed was proportionate to the offense and the offender. *Id*. The Court explained that a departure cannot be based "on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report [PSIR], that the characteristic has been given inadequate or disproportionate weight." *Id*. at 300, quoting MCL 769.34(3)(b).

Although dealing with statutory language in MCL 769.34 that is no longer applicable due to *Lockridge*, 498 Mich at 391 (regarding substitution of the words "may" for "shall"), the *Smith* Court's methodology to effectuate the principle of proportionality remains relevant. Addressing appellate review of departure sentences, the *Smith* Court stated:

> Appellate courts are obliged to review the trial court's determination that a . . . reason exists for departure. Accordingly, the trial court's justification "must be sufficient to allow for effective appellate review." In [*People v Babcock*, 469 Mich 247, 258-259; 666 NW2d 231 (2003)], this Court explained that an appellate court cannot conclude that a particular . . . reason for departure existed when the trial court failed to articulate that reason. Similarly, if it is unclear why the trial court made a particular departure, an appellate court cannot substitute its own judgment about why the departure was justified. A sentence cannot be upheld when the connection between the reasons given for departure and the extent of the departure is unclear. When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been. [*Smith*, 482 Mich at 304 (citations omitted).]

Also identified as assisting appellate review of the proportionality of a departure sentence is "when a court explains the similarity between the facts justifying the departure and the facts describing a crime meriting the same sentence under the guidelines. A comparison of a defendant's characteristics and those of a hypothetical defendant whose recommended sentence is comparable to the departure sentence is a valuable exercise." *Id*. at 310. In this vein, a "potential means of offering . . . a justification [for a departure] is to place the specific facts of a defendant's crimes in the sentencing grid." *Id*. at 306. The Court reasoned that "reference to the grid can be helpful, because it provides objective factual guideposts that can assist sentencing courts to ensure that the offenders with similar offense and offender characteristics receive substantially similar sentences," *id*. at 309 (quotation marks and citation omitted), and thus "minimize idiosyncrasies" in sentencing. *Id*. at 311. However, courts are not required to "sentence defendants with mathematical certainty" and "precise words [are not] necessary . . . to justify a particular departure." *Id*.

A common thread in the line of sentencing cases both before and after *Lockridge* is that a court may not depart from the sentencing guidelines based on factors already taken into account under the guidelines except under specific circumstances. In determining whether the chosen departure sentence is more proportionate than a guidelines sentence, relevant considerations include: "(1) whether the guidelines accurately reflect the seriousness of the crime, . . . (2)

factors not considered by the guidelines, . . . and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525 (citations omitted).

## III. ANALYSIS

Here, the trial court provided more than adequate reasons to depart upward from the sentencing guidelines. In determining whether to impose a departure sentence, factors that may be considered include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*), aff'd in part and rev'd in part on other grounds 500 Mich 453 (2017) (citations omitted).]

Factual distinctions can justify upward departures when the trial court feels that the guidelines do not adequately account for the offenses then before it. *People v Walden*, 319 Mich App 344, 353-354; 901 NW2d 142 (2017).

The court here relied in part on the seriousness of defendant's particular offenses. JA's mother stated on the record that defendant had caused "irreparable damage" to her daughter. DS's mother described that her daughter, who was then only 11, had attempted suicide more than once, still experienced difficulty sleeping, and had suffered academically. The trial court stated, "The effects of these offenses on these little girls cannot be adequately reflected in any minimum [s]entence guideline."

Defendant argues that any harm done to JA by virtue of sexual penetration was already considered in the assessment of 50 points for offense variable (OV) 11. Defendant also raises a related, and unpreserved, argument that the court erred in scoring 50 points for multiple penetrations under OV 11 when the sentencing offense—CSC-II—was not based on a conviction involving sexual penetration. Generally, the scoring of the offense variables is offense specific. *People v McGraw*, 484 Mich 120, 126-127; 771 NW2d 655 (2009). However, MCL 777.41(1)(a) provides that a court must assess 50 points for OV 11 when two or more criminal sexual penetrations occurred. Pursuant to MCL 777.41(2)(a), the court must consider all sexual penetrations of the victim by the offender arising out of the sentencing offense. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). A sexual penetration arises out of the sentencing offense when it results from the sentencing offense and has a causal relationship that is more than incidental. *Id*. at 132.

In this case, defendant admitted that he sexually touched 4-year-old JA on two occasions, and that on the latter date, he put his penis into JA's rectum and her mouth. Vaginal penetration, fellatio, and cunnilingus are separate penetrations for the purpose of scoring OV 11. *Id*. While defendant's intentional touching was sufficient to establish the sentencing offense of CSC-2, the subsequent penetrations arose from the touching and were causally connected. Therefore, the court did not err in the assessment of 50 points for OV 11. Moreover, the trial court did not limit

its finding to the harm caused by these two specific sexual penetrations. The trial court noted that defendant's victims "were little, little girls" and that JA was "savagely" assaulted. OV 11 does not take into account the age of the victim or the brutality of the penetration, and therefore did not adequately account for the circumstances of this case.

As an additional basis for its departure, the trial court noted that defendant clearly had not learned from his prior incarceration and attempts at rehabilitation, citing defendant's significant history of criminal convictions. Defendant had a history of sexual assaults and attempts that resulted in prior incarceration and counseling. The PSIR indicated that in 1988 defendant raped his sister and was removed from his home. Defendant had acted out sexually and violently as a youth. He participated in inpatient treatment at three different facilities. Despite this treatment, defendant was convicted of attempted CSC-III in 1997. During his police interview on April 13, 2014, defendant indicated that he had sexually assaulted other victims, crimes that have to be investigated. Courts may consider uncharged offenses and pending charges in sentencing. *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). The trial court properly considered defendant's lengthy history of sexual misconduct and his failure to rehabilitate.

The trial court also expressed a need to adequately protect society. The need to protect other children is a factor not adequately considered by the guidelines. *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001). Defendant's pattern of sexual assaults and admissions that he had sexually assaulted other victims support the trial court's conclusion that defendant posed a significant threat to young children. Given defendant's failed rehabilitation, the court was justified in its concerns for the safety of other children and society.

Defendant contends, however, that the trial court failed to adequately consider mitigating circumstances. Specifically, defendant notes that he was the victim of sexual and physical abuse as a child, is emotionally impaired and schizophrenic, and suffers from leukemia which was then in remission. The court did consider these issues as they were included in defendant's PSIR. Moreover, the trial court specifically noted that defendant underwent psychological testing to determine whether he was competent to stand trial and the evaluator believed he "may have been exaggerating his symptoms." The trial court's thorough review of the PSIR supports it did consider the subject information.

Considering the record as a whole, the trial court more than adequately supported that an upwardly departing sentence was warranted in this case.

Yet, defendant correctly contends that the trial court did not support the extent of the departure made in this case. The top end of defendant's recommended sentencing guidelines range was 19 years. The court imposed a minimum sentence of 41 years, more than double the top of the range. It is quite possible that this lengthy sentence was warranted. However, the court made no discussion of how this particular 41-year sentence was calculated or how it tied to the factors supporting departure.

In Lower Court No. 14-006468-FC, we therefore vacate defendant's sentence and remand to the trial court to articulate its reasons for selecting the particular upwardly departing sentence. On remand, the court may impose an identical sentence, if supported, or may choose some other

minimum sentence.  And we affirm defendant's unchallenged sentence in Lower Court No. 14-006469-FH.  We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica