*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re STINSON, Minors.

UNPUBLISHED
October 27, 2022

No. 360303
Wayne Circuit Court
Family Division
LC No. 2019-000511-NA

Before: RONAYNE KRAUSE, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to her minor children, BRS, DJS, KCS, and RHS, under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (child is reasonably likely to be harmed if returned to parent's home).[1] We affirm.

---

[1] In its brief on appeal, petitioner argues that this Court lacks jurisdiction over this appeal because respondent's claim of appeal was not timely filed. Petitioner notes that the court terminated respondent's parental rights on November 10, 2021, that respondent requested appellate counsel on February 8, 2022, and the claim of appeal was not filed until February 15, 2022. MCR 3.993(C)(1) provides that "[e]xcept as modified by this rule, chapter 7 of the Michigan Court Rules governs appeals from the family division of the circuit court." MCR 7.204(A)(1) provides, among other things, that "an appeal of right in any civil case must be taken within 21 days" from entry of "the judgment or order appealed from" or an "order appointing counsel." MCR 3.993(D)(1) requires that a request for appointment of appellate counsel be made "within 14 days after *notice of the order* is given or an order is entered denying a timely filed postjudgment motion." (Emphasis added.) In this case, there is no indication that respondent was served with the order terminating parental rights at or near the November 10, 2021 termination hearing. Instead, the lower court record and documents attached to the claim of appeal show that an "Advice of Rights after Order Terminating Parental Rights" was not "mailed/served" until February 8, 2022, that a request for court-appointed appellate counsel was filed with the court on February 8, 2022, and that the "Claim of Appeal and Order Appointing Appellate Counsel" was signed by the trial court

## I. FACTUAL BACKGROUND

Respondent has given birth to four children, all currently under the age of six. Her three oldest children, BRS, DJS, and KCS, were fathered by D. Stinson, Sr. (hereinafter "Stinson"). No legal father was ever established for respondent's youngest daughter, RHS, but testimony indicated that respondent has identified Stinson as RHS's biological father.

In 2019, Stinson's parental rights to the three oldest children were terminated because he severely abused one of the children. These child protective proceedings were initiated in March 2019, after DJS, then a year old, suffered second- and third-degree burns to his feet while in Stinson's care. The third-degree burns required debridement and multiple skin grafting surgeries. Stinson claimed that DJS climbed into the bathtub, accidentally turned on the hot water, and then stood there for a few seconds before crying. However, expert testimony indicated that the presence of clear white lines of demarcation on both legs established forcible immersion burns. The trial court concluded in the 2019 proceedings that DJS's injuries were nonaccidental, that Stinson intentionally caused injury to the infant, and that he failed to take responsibility for his actions. Thereafter, the court terminated Stinson's parental rights to the three oldest children under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), and (k)(*iv*). This Court affirmed the termination of Stinson's parental rights to these children in 2020. *In re Stinson*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 350435); *In re K C Stinson*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2020 (Docket No. 351943).[2] Stinson also pleaded guilty to second-degree child abuse, and was sentenced in 2020 to two years' probation.

Respondent was identified as a nonrespondent parent in the 2019 proceedings. That is, the Department of Health and Human Services (DHHS) did not seek termination of her parental rights for failing to protect DJS from Stinson's physical abuse. After the 2019 termination of Stinson's parental rights, the children remained in respondent's care and the trial court terminated its jurisdiction.

In June 2021, Child Protective Services (CPS) received a complaint that Stinson was seen striking one of the male children with enough force that the child fell to the ground. The investigation that followed resulted in CPS discovering, on two consecutive days in June 2021, the children in Stinson's unsupervised care while respondent was at work. CPS removed the children from respondent's home and placed them with relatives under a safety plan. On September 22, 2021, DHHS filed a petition seeking termination of respondent's parental rights at initial disposition. The petition alleged that it was contrary to the welfare of the children to remain in respondent's care because of her improper supervision, failure to protect, and threatened harm. Although the petition referenced the 2019 termination of Stinson's parental rights and the facts related thereto, there were no allegations that respondent failed to protect DJS from the 2019 abuse. The petition also alleged that Stinson had recently struck one of the children and that another child

---

on February 9, 2022. The claim of appeal was filed on February 15, 2022. Thus, respondent's claim of appeal was timely filed within 21 days of the appointment of appellate counsel.

[2] KCS was born after the March 2019 incident and, consequently, he was the subject of a separate petition, order of termination, and appeal to this Court.

had a bruise on his upper arm that "appeared that someone had grabbed him really hard." Stinson was not identified as a respondent in the petition. Rather, as to the three oldest children, it was noted that his parental rights had been terminated, and as to RHS, Stinson was identified as her putative father.

During hearings in November 2021, the court found grounds to assume jurisdiction over the children. It then concluded that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(g) and (j), and that termination of respondent's parental rights was in the children's best interests. Thereafter, respondent appealed to this Court.

## II. ANALYSIS

### A. REASONABLE EFFORTS

As an initial matter, we note that respondent asserts in her brief on appeal that she "was never given a treatment plan or instruction to help her protect the children from [Stinson] which she tried her best to do," and that the court "could have taken temporary custody and helped [respondent] set up a better plan to never allow [Stinson] to come in contact with the children." To the extent that this can be read as an argument that the trial court failed to order DHHS to provide reasonable efforts toward reunification or determine that aggravated circumstances existed to preclude reasonable efforts, see *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); MCL 712A.19a(2), we conclude that this argument is waived. This argument was not included in respondent's statement of the questions presented in her brief on appeal nor did she cite any authority in support of this argument. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 164 (2000). The failure to properly brief an issue on appeal constitutes abandonment. *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009). Therefore, this issue is not properly before this Court.

### B. STATUTORY GROUNDS

The trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(g) and (j).

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(g)[3] and (j) which permit termination under the following circumstances:

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The record supports the trial court's reliance on these statutory grounds. There was clear and convincing evidence that respondent lacked the parenting skills necessary to properly supervise her children and protect them from known risks of harm.

The court took judicial notice of the prior child protective proceeding, which established that in 2019, respondent's then one-year-old son, DJS, suffered second- and third-degree burns to his feet while in Stinson's care. During this earlier proceeding, experts explained that the presence of white clear lines of demarcation on both legs established that the burns were not accidental, but were a consequence of "forcible immersion." As a result of these events, Stinson's parental rights to respondent's three oldest children were terminated. The evidence further established that respondent was aware of these prior proceedings and knew that Stinson eventually pleaded guilty to child abuse charges. There was also testimony that respondent understood that Stinson was not permitted to have any contact with the children, supervised or unsupervised. Despite this knowledge, there was clear and convincing evidence that respondent left the children alone in Stinson's care on at least two occasions, for several hours. Indeed, there was sufficient evidence to support the court's finding that respondent permitted Stinson to continue to have a role in the children's lives despite the termination of his parental rights. The evidence was sufficient to support the court's finding that respondent failed to properly supervise the children and, as a consequence, she exposed them to a known risk of danger.

Further, it was unlikely that respondent would be able to provide proper care and custody within a reasonable time and, as a consequence, the children would continue to be at risk of harm in the future if returned to respondent's care. The evidence demonstrated that respondent's parenting skills and parental judgment were poor. Even when she was advised of the obvious dangers, her conduct evidenced that she was unwilling or unable to protect her children from known risks of harm. Not only did respondent leave the children alone and unsupervised with the

---

[3] In its oral ruling the court recited the wrong version of MCL 712A.19b(3)(g), which the Legislature amended by 2018 PA 58, effective June 12, 2018. The current version of MCL 712A.19b(3)(g) replaces "without regard to intent" with "although, in the court's discretion, financially able to do so[.]" However, in its written opinion, the court applied the proper version of the statute.

man who severely abused one of her children, she allowed this man to be in the home ostensibly to continue to refurbish the house. Further, there was credible evidence from which the court could conclude that after the termination of Stinson's parental rights, respondent became pregnant and gave birth to his child. At the very least, respondent admitted that she had sex with Stinson after the termination of his parental rights.

The evidence demonstrated that respondent was reluctant, indeed, unwilling to place her children's safety ahead of her own needs. Not only did she continue a relationship with a known child abuser, she allowed this individual to have contact with her children despite being warned that, if discovered, her own parental rights would be in jeopardy. Accordingly, there was clear and convincing evidence to support the court's finding that the children would be harmed it returned to respondent's care.

## C. BEST INTERESTS

A preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights is in the children's best interests.

Once a statutory ground for termination has been established, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App at 42. The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App at 131. "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87.

The trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests. There was a great deal of evidence that respondent was able to provide financially for the children and create a suitable physical home environment. Respondent was employed and she and the maternal grandfather had purchased a home from the Detroit Land Bank. It appears that respondent and both the maternal and paternal relatives were participating in efforts to refurbish this home so that respondent and the children would have affordable and suitable housing. There was also testimony that a parent-child bond existed, that

the children were always happy to see respondent, that respondent consistently attended parenting time, and that respondent engaged appropriately with her four children during visits.

However, despite the foregoing, there was compelling evidence that respondent did not, and would not, recognize known risks of harm. Respondent denied that she continued to have a relationship with Stinson. However, the record suggests otherwise. Respondent admitted that on at least one occasion she had sex with Stinson after his parental rights were terminated, and she continued to permit him to participate in the repairs on her home. Respondent's willingness to accept free labor actually came at the cost of exposing her children to a known danger. The record suggests that respondent rationalized her conduct by asserting her belief that Stinson could be around the children if supervised. However, even if respondent actually thought that was permissible, it is clear that it was not realistic. Respondent's lack of insight into the consequences of her actions suggest that she will not be able to keep her children safe. Accordingly, although it appears as if the respondent could provide a physical home for the children, on balance, this was outweighed by the children's need for safety and security.

At the time of the termination hearing, two of the children were placed with a paternal relative and two were living with a maternal relative. Although placement with a relative weighs against termination, and the fact that a child is living with relatives must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App at 43. In this case, the trial court acknowledged the relative placements, but it found that under the circumstances in this case, relative placement did not weigh against termination. The court found that the extended family actually enabled contact with Stinson. Indeed, the court implored DHHS to investigate the children's placement more thoroughly. Ultimately, the court concluded that termination of respondent's parental rights was in the children's best interests despite being placed with relatives because this was the best avenue by which the children would be afforded the greatest opportunity to achieve safety, stability, and permanence.

Thus, the court properly weighed the appropriate factors when considering the children's best interests. Although respondent could provide for the children's physical needs, there was insufficient evidence to find that she could keep them safe. On balance, a preponderance of the evidence weighed in favor of terminating respondent's parental rights. Considering this, the trial court did not clearly err.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Christopher M. Murray