*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RICHARD BERNARD WALSER,

      Defendant-Appellant.

UNPUBLISHED
May 19, 2026
2:00 PM

No. 374452
Oscoda Circuit Court
LC No. 2024-001968-FH

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b)(*ii*) (sexual contact with a blood-related victim at least 13 but less than 16 years of age). The trial court sentenced defendant to serve concurrent sentences of 5 to 15 years in prison for each conviction. We affirm.

## I. FACTS

The victim in this case was defendant's then 15-year-old granddaughter. The victim testified that in 2017, while visiting defendant's home for the Fourth of July weekend, defendant: called her into the kitchen area; put his arm around her right shoulder; pulled her in for a hug; told her "something along the lines of that [she] was getting to be hot, or he might have used the word hottie"; "open-mouthed" kissed her, putting his tongue in her mouth; grabbed her butt; touched her genital area over her clothing; and grabbed her butt a second time. The entire encounter lasted "[m]aybe less than a minute." Defendant was found guilty of three counts of CSC-II.

The trial court ultimately found that the offense variables (OVs) did not "fully take into consideration the full extent of [d]efendant's actions, the long-term effect that this will have and has had on the victim and the permanent damage that he has caused by way of his actions, as well as the violation of trust . . . ." The court noted that as the victim's grandfather, defendant was tasked with protecting the victim, not victimizing her. The court also noted that defendant's repeated bond violations—which were accumulated when he contacted the victim's mother, attempted to contact the victim, and sent threats—were not taken into consideration by the minimum sentencing guidelines range of 12 to 24 months. Accordingly, finding that the minimum

sentencing guidelines range was not reasonable or proportionate in this case, the trial court sentenced defendant to serve concurrent sentences of 5 to 15 years in prison for each conviction. Defendant now appeals.

## II. UPWARD DEPARTURE AT SENTENCING

On appeal, defendant argues that the trial court unreasonably departed from the recommended minimum sentencing guidelines range. We disagree.

### A. STANDARD OF REVIEW

We review a trial court's upward departure from the minimum sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The reasonableness of a sentence is reviewed for an abuse of discretion. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). An abuse of discretion occurs when the sentence violates the principle of proportionality as set forth in *Milbourn*.[1] *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). The principle of proportionality requires that sentences are "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted). "Resentencing will be required when a sentence is determined to be unreasonable." *Lockridge*, 498 Mich at 392.

### B. ANALYSIS

Although Michigan's sentencing guidelines are advisory only, sentencing courts must still consider and consult them. *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017). Sentencing courts may exercise their discretion and depart from an applicable guidelines range, provided that the departure is reasonable. *Lockridge*, 498 Mich at 391-392. "[A] sentence is reasonable under *Lockridge* if it adheres to the principle of proportionality set forth in *Milbourn*." *Walden*, 319 Mich App at 351. The key inquiry is "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990), overruled in part by *Steanhouse*, 500 Mich 453.

When applying this principle, the trial court may consider several factors including, but not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Walden*, 319 Mich App at 352-353 (quotation marks and citation omitted).]

---

[1] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), overruled in part by *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017).

The Michigan Supreme Court "has further recognized that conduct beyond the sentencing offense can be considered for purposes of departing from the guidelines." *People v McGraw*, 484 Mich 120, 130 n 30; 771 NW2d 655 (2009). "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022).

A trial court's decision to depart from the sentencing guidelines should not be based on factors that are "contemplated by at least one offense variable (OV)" if the trial court offers no reasoning as to why the scoring of that OV was "insufficient to reflect" the particular circumstances of the present case. See *Dixon-Bey*, 321 Mich App at 526-527. Accordingly, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. at 525 (quotation marks and citations omitted).

### 1. CONSIDERATION OF DEFENDANT'S OVs AND PRVs

On appeal, defendant first argues that the trial court erred by failing to properly account for defendant's OVs and prior record variables (PRVs) when departing from his recommended minimum sentencing range. We disagree.

In this case, defendant was assigned: (1) 20 points for PRV 7, reflecting that "[t]he offender has 2 or more subsequent or concurrent convictions," MCL 777.57(1)(a); (2) 10 points for OV 4, reflecting that "[s]erious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(a); and (3) 10 points for OV 12, reflecting that "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed," MCL 777.42(1)(b).

Defendant first asserts that the trial court should have explicitly considered his lack of criminal history in formulating its sentence; however, the language that defendant quotes from *Dixon-Bey* concerns this Court's determination that the *Dixon-Bey* trial court had no basis from which to determine that the defendant was a " 'recidivist . . . criminal.' " *Dixon-Bey*, 321 Mich App at 525. This case is distinguishable because, unlike the *Dixon-Bey* trial court, the trial court in this case did not make any determination about defendant's criminal history as part of its basis for a departure sentence. Moreover, contrary to defendant's suggestion, "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). In this case, the trial court specifically noted that it had the opportunity to review the presentence investigation report (PSIR), which included defendant's PRV score. Because the trial court was clearly aware of the contents of the PSIR, which displayed defendant's PRV score, defendant cannot conclusively show that the trial court failed to take into account his lack of criminal history. See *id*. at 64.

Defendant further argues that the trial court erred by determining that the OVs did not adequately account for the psychological impact that defendant's actions had on the victim because OV 4 was already assigned the highest score possible. We disagree.

This Court has held that the particular circumstances of an offense may lead to OV 4 not "adequately accounting" for the total range of psychological harm inflicted on a victim. *People v Lampe*, 327 Mich App 104, 129; 933 NW2d 314 (2019). In this case, the trial court focused on the "long-term effect," "permanent damage," and the "violation of trust" that defendant's conduct caused the victim as reasons that defendant's OVs did not "fully take into consideration the full extent of Defendant's actions . . . ." The record supported these findings. At trial, the victim, who was still receiving therapy services, described herself as feeling violated, sad, and confused about why someone she loved would do something like this to her. She noted that the incident affected how she trusts other people, that she was later diagnosed with post-traumatic stress disorder, and that she had violent nightmares centered around the assault and defendant. At sentencing, the victim further testified that in the months after the incident, she could not stand to be awake and would often head straight to her room to sleep after returning from school. She also recounted turning to alcohol and marijuana to try to forget the assault, noting that "[b]eing 15 and then 16 was either sober hell or some variant of intoxicated darkness." She further described the effects of trauma in delaying her education, explaining that she was two years behind in obtaining her collegiate degree "because of the re-traumatization of this legal process." Accordingly, the trial court did not abuse its discretion by finding that OVs did not adequately account for the intense psychological harm to the victim in this case. See *id*.

Moreover, when determining that defendant's OVs did not "fully take into consideration the full extent of Defendant's actions" in this case, the trial court considered defendant's relationship to the victim, noting that as the victim's grandfather, defendant was tasked with protecting the victim, not victimizing her. When determining whether a sentence is proportionate, a trial court may consider "the relationship between the victim and the aggressor . . . ." *Walden*, 319 Mich App at 352-353 (quotation marks and citation omitted). In this case, the court found that defendant's conduct was "more heinous" because it was toward his grandchild, who he was "tasked with protecting." The court described related children as being "very vulnerable individuals . . . ."[2] Additionally, the trial court specifically found that "[t]he only reason that [the victim] came over near him is because she trusted him as her grandfather . . . ." This finding is supported by the victim's testimony that: (1) the incident began after defendant called her into the kitchen; (2) she felt violated, sad, and confused about why someone she loved would do something like this to her; and (3) before the incident, she had trust in defendant because of her familial relationship to him. Accordingly, the trial court did not abuse its discretion by finding that OVs did not adequately account for defendant's relationship to the victim in this case. See *id*.

Lastly, when determining that defendant's OVs did not "fully take into consideration the full extent of Defendant's actions" in this case, the trial court also considered defendant's repeated bond violations[3] due to him contacting the victim's mother, attempting to contact the victim, and

---

[2] Notably, OV 10—which accounts for the exploitation of a vulnerable victim—was not assigned any points in this matter. See MCL 777.40.

[3] At sentencing, defendant received 719 days' credit for the time he spent in jail after his personal recognizance bond was revoked and during the competency evaluation. The trial court determined that defendant's communications while out on bond threatened the victim's mother, threatened to

sending threats to influence the case. When determining whether a sentence is proportionate, a trial court may consider "the defendant's misconduct while in custody. . . ." *Id*. (quotation marks and citation omitted). Additionally, "[a]n appropriate sentence should give consideration to the reformation of the offender [and] the protection of society . . . ." *Boykin*, 510 Mich at 183. In this case, the court revoked defendant's bond after he contacted the victim's mother multiple times by text and voice mail and threatened her in an attempt to influence the victim's credibility and testimony. The trial court's consideration of defendant's bond violations is reasonably linked to the court's determination that defendant's recommended minimum sentencing range would not adequately protect the victim from continued contact or threats. Accordingly, the trial court did not abuse its discretion by finding that OVs did not adequately account for defendant's repeated bond violations. See *Boykin*, 510 Mich at 183; *Walden*, 319 Mich App at 352-353.

## 2. WEIGHT AND PREJUDICE

Defendant further argues that the trial court weighed irrelevant factors too heavily and was influenced by passion and prejudice as opposed to proportionality. We disagree.

We consider the record as a whole, and the trial court's statements in context, when determining issues of judicial bias. *People v Gaines*, 306 Mich App 289, 314; 856 NW2d 222 (2014). "Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). And at the critical stage of sentencing, "when penalty is levied, the law vindicated, and the grievance of society and the victim redressed, the language of punishment need not be tepid." *People v Antoine*, 194 Mich App 189, 191; 486 NW2d 92 (1992).

Defendant first argues that the trial court's use of pejorative or opinionated language at sentencing reveals prejudice against defendant, and that such prejudice makes his departure sentence unreasonable. Considered in context, the court's statement that defendant's conduct was "disgusting" was not indicative of bias. The statement immediately followed the court's recitation of defendant's sexual assault of his granddaughter, and the trial court's "language of punishment need not be tepid." *Id*.

Defendant further argues that the following statements made by the trial court at sentencing show that the court treated defendant's conduct as first-degree criminal sexual conduct (CSC-I), opposed to CSC-II: (1) "thank God [defendant] didn't have more chances to be alone with [the victim], because I have no doubt she would have continued to have been victimized if that was the case"; and (2) "Is it as heinous as a criminal sexual conduct first degree? In some ways, yes. Is it as serious of a penalty? No. But the long-term effect that that has on a girl, on a little girl, is in no way mitigated because of the level of charge." A court may not sentence a defendant as if he was convicted of a more serious crime than those he was actually convicted of. See *Dixon-Bey*, 321 Mich App at 528. But, in this case, the trial court did not justify its upward departure because of facts it felt could have supported a verdict of CSC-I; in fact, the trial court expressly stated that defendant had not been convicted of CSC-I and repeatedly referred to defendant's convictions as

divorce his wife (the victim's grandmother who lived with the victim's mother), and were attempts to influence witness testimony.

-5-

CSC-II. When making these statements, the trial court was not deciding whether the facts supported a conviction of CSC-I, but primarily, whether the difference between CSC-I and CSC-II was salient when considering the "long-term effect" on the victim. Accordingly, when considering the record as a whole, and the trial court's statements in context, we are not persuaded that the trial court sentenced defendant as if he were convicted of CSC-I. See *Gaines*, 306 Mich App at 314.

Defendant also argues that the trial court unreasonably took facts found beyond a reasonable doubt by the jury as "100 percent true," and by doing so, imposed a harsher sentence than it should have. Defendant misunderstands the trial court's remarks. The two statements that defendant refers to are as follows: (1) the victim, defendant's "granddaughter, who I agree 100 percent did give a very eloquent and a very clear, concise allocution and statement," and (2) "the prosecutor is 100 percent correct that [defendant's action] is something that can never fully be allocated or argued in a way that gives accurate representation to how serious that is." When read in context, the record reflects that these statements were not confirmations of facts but expressions of opinion as to the veracity of the victim's impact statement and the seriousness of defendant's conduct. Neither statement can be reasonably read as a factual finding related to defendant's guilt. To the contrary, both statements are in line with what the trial court is meant to accomplish at sentencing, which is to assess the seriousness of the matter. See *Steanhouse*, 500 Mich at 472.

Finally, defendant argues that the trial court impermissibly and unreasonably took into consideration defendant's age and intended his sentence to function as the equivalent of imprisonment for life.[4] This Court has rejected the argument that a defendant's age is sufficient to overcome the presumptive proportionality of a sentence. *People v Bowling*, 299 Mich App 552, 558-559; 830 NW2d 800 (2013). Although defendant's sentence in this case is not presumptively proportionate because it is outside the recommended guidelines range, see *People v Posey*, 512 Mich at 317, 359; 1 NW3d 101 (2023), defendant has not pointed to any law that suggests the trial court needed to consider defendant's advanced age as a mitigating factor in determining an upward departure sentence. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *Id*. (quotation marks and citation omitted).

Therefore, we conclude that the trial court did not abuse its discretion by determining that an upward departure sentence was more proportionate to defendant and his conduct than the

---

[4] In support of this argument, defendant cites the following statement made by the trial court at sentencing: "And the prosecutor also states that if this is something that is going to weigh on [the victim's] mind until her last days, it should be something that weights on the Defendant[']s as well." Accordingly, the trial court was recounting the *prosecutor's* hope that defendant feels remorse until the last of his days. The trial court did not make any findings regarding defendant's age or health in relation to his sentence.

recommended guidelines range, and defendant has not established that the court's sentence was otherwise based on prejudice. See *Steanhouse*, 500 Mich at 459-460.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney